# MATTER OF ROBERTS

## In Deportation Proceedings

## A-35959317

### Decided by Board May 1, 1991

(1) An applicant for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1988), who is an aggravated felon is not required to meet a heightened discretionary test beyond the requirements set forth in *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978), *Matter of Buscemi*, 19 I&N Dec. 628 (BIA 1988), and *Matter of Edwards*, 20 I&N Dec. 191 (BIA 1990).

(2) A sole conviction for the felony sale of a controlled substance is sufficient to support a determination that the respondent is a drug trafficker within the meaning of section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (1988).

(3) The immigration judge, in exercising his discretion to grant section 212(c) relief, may not consider evidence on a theory of entrapment after the introduction of the respondent's conviction record because such theory directly relates to the issue of the respondent's ultimate guilt or innocence.

CHARGE:

Order: Act of 1952—Sec. 241(a)(4)(B) [8 U.S.C. § 1251(a)(4)(B)]—Convicted of aggravated felony

Sec. 241(a)(11) [8 U.S.C. § 1251(a)(11)]—Convicted of controlled substance violation

ON BEHALF OF RESPONDENT:
Pro se

ON BEHALF OF SERVICE:
Karl V. Cozad
General Attorney

BY: Milhollan, Chairman; Dunne, Vacca, and Morris, Board Members. Concurring in part and dissenting in part: Heilman, Board Member.

In a decision dated June 7, 1990, the immigration judge found the respondent deportable under sections 241(a)(4)(B) and (11) of the Immigration and Nationality Act, 8 U.S.C. §§ 1251(a)(4)(B) and (11) (1988), as an alien convicted of an aggravated felony and of a controlled substance violation. The immigration judge granted the respondent's application for a waiver of inadmissibility under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1988). The Immigration and Naturalization Service has appealed. The appeal will be sustained.

The respondent is a 41-year-old native and citizen of Jamaica who entered the United States as a lawful permanent resident on September 17, 1979, at the age of 29. Conviction records for the respondent

reflect that on October 12, 1989, he was convicted in a Missouri State court, upon a plea of guilty, of the felony offense of sale of a controlled substance (cocaine). He was sentenced to 8 years in prison. Reportedly, the respondent's sentence was modified to a term of 120 days.[1]

On June 7, 1990, at a hearing on the merits of the respondent's application for relief from deportation pursuant to section 212(c) of the Act, the respondent testified that he is married but separated from his wife, who lives in New York with their four children, whose ages range from 18 to 11. The respondent stated that he and his family resided in Brooklyn, New York, from 1979 until 1987. He related that during this period, he worked for a construction company and for a private security company. The respondent stated that in 1987, he moved to Kansas City where he resided with his girlfriend, with whom he subsequently had a son. He testified that he commuted between New York City and Kansas City from 1987 to 1989, and that he continued to work for the same construction company in New York on a job-by-job basis but was unemployed in Kansas City. He added that he and his girlfriend ended their relationship in 1989, and that his young son is in the custody of the child's grandmother.

The respondent testified that his wife and his three oldest children are lawful permanent residents and that his youngest daughter and 2-year-old son are United States citizens. He stated that he has no other close relatives living in Jamaica with the exception of his father and his aunt, with whom he does not communicate. The respondent related that he has an 11th grade education, and that he had requested some classes in prison but was released before his request was acted upon. He stated that he has no other convictions and has never been charged by the police with any other offenses. He added that while in prison, he obeyed all the rules and was known as the quiet one because he spent a lot of time reading his Bible. He stated that he filed income tax returns up through 1986. The respondent testified that he gave his wife most of the money he earned, including that earned while they were separated.

The respondent testified that his arrest was the result of doing a favor for a friend by allowing a man to pick up drugs in exchange for money at his home, and he claimed that it had been a "set up." He asserted that he pled guilty only to the fact of giving the man his friend's package in exchange for the money, but not to the offense of

---

[1] The modification to the respondent's sentence is not reflected in the conviction record. However, the respondent testified that he was only required to serve 120 days of his sentence and was released from prison in mid-February of 1990. This fact is substantiated by the Service's statement to the court that the respondent was released from state custody prior to the time that the Service received notification and apprehended the respondent on March 6, 1990, for deportation proceedings.

selling drugs. The respondent added that at the time he agreed to plead guilty, he had no knowledge of the 8-year sentence to be imposed. He claimed that his public defender did not tell him that his conviction may affect his immigration status. He testified that his desire is to return to his family and job in New York. The respondent implored that he be allowed to remain in the United States because his family needs his support, and he would not be able to afford construction tools or real estate in Jamaica.

Besides testimony, a number of documents were entered into evidence. These documents include the respondent's criminal indict- ment and judgment upon his guilty plea in 1989, the respondent's immigration documents, including his Immigrant Visa and Alien Registration (Form FS-511) evidencing his arrival in New York on September 17, 1979, and letters from his wife and three of his children requesting that the respondent be permitted to resume living with them and working in New York.

In his decision, the immigration judge determined that the respon- dent was statutorily eligible for a section 212(c) waiver, and that such relief was warranted in the exercise of discretion. He reasoned that the serious negative factor of the respondent's criminal conviction was overcome by the respondent's period of residence in this country, his family ties and the hardship that deportation would have upon his family, his clean criminal record prior to and after his conviction, and his history of employment. The immigration judge stated that the respondent's sole conviction for sale of cocaine was not sufficient to establish that he is a drug trafficker. The immigration judge also noted that the circumstances of the respondent's arrest and the long delay before indictment raised the possibility of entrapment. He further noted that the respondent was misinformed during his criminal plea arrangement because he was not told of the effect that such a plea would have on his immigration status. For these reasons, the immigration judge granted the respondent's section 212(c) waiver request.

On appeal, the Service argues that the immigration judge erred in finding that the respondent merited a section 212(c) waiver as a matter of discretion. The Service contends that the immigration judge incorrectly concluded that the respondent's sole felony conviction for sale of cocaine was not sufficient to find that he was a "drug trafficker." The Service further asserts that a determination of eligibility for section 212(c) relief for an aggravated felon requires a higher discretionary test than is presently recognized by case law.

Section 241(a)(4)(B) of the Act, added by section 7344 of the Anti- Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, 4470- 71, renders deportable an alien who is "convicted of an aggravated

felony at any time after entry." Prior to the enactment of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, on November 29, 1990, section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (1988), defined the term "aggravated felony" to include any drug trafficking crime as defined in section 18 U.S.C. § 924(c)(2) (1988), or any attempt or conspiracy to commit any such act, committed within the United States. In *Matter of Barrett*, 20 I&N Dec. 171 (BIA 1990), the Board of Immigration Appeals held that the definition of "drug trafficking crime" in section 18 U.S.C. § 924(c)(2) (1988), as amended by section 6212 of the Anti-Drug Abuse Act of 1988, 102 Stat. at 4360, for purposes of determining a drug-related "aggravated felony" within the meaning of section 101(a)(43) of the Act, encompasses state convictions for crimes analogous to offenses under the Controlled Substances Act, 21 U.S.C. § 801 et seq. (1988), the Controlled Substances Import and Export Act, 21 U.S.C. § 951 et seq. (1988), or the Maritime Drug Law Enforcement Act, 46 U.S.C. App. § 1901 et seq. (1988).

While the Service's appeal was pending in this case, Congress enacted section 501(a) of the Immigration Act of 1990, 104 Stat. at 5048, which significantly revises the definition of an aggravated felony contained in section 101(a)(43) of the Act. Section 101(a)(43) was amended, in pertinent part, to provide that the term "aggravated felony" includes "any illicit trafficking in any controlled substance (as defined in section 102 of the Controlled Substances Act)" and that "[s]uch term applies to offenses described in the previous sentence whether in violation of Federal or State law." Moreover, section 501(b) of the Immigration Act of 1990, 104 Stat. at 5048, further provides that amended section 101(a)(43), which clarifies that illicit trafficking in controlled substance offenses under state law are now covered in the definition of an aggravated felony, "shall be effective as if included in the enactment of section 7342 of the Anti-Drug Abuse Act of 1988."

In the case before us, the respondent was convicted of the felony offense of criminal sale of a controlled substance, cocaine, in violation of Missouri law. At his deportation hearing, the respondent was found to be an aggravated felon within the meaning of the Act. The respondent's state conviction for sale of cocaine is now clearly included in the definition of an aggravated felony under section 101(a)(43) of the Act. Section 501 of the Immigration Act of 1990, 104 Stat. at 5048. We therefore conclude that the respondent's deportability under both sections 241(a)(4)(B) and (11) of the Act has been established by clear, unequivocal, and convincing evidence. *See* 8 C.F.R. § 242.14(a) (1991); *Woodby v. INS*, 385 U.S. 276 (1966).

Section 212(c) of the Act provides, in pertinent part, that aliens

"lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to" certain specified grounds for exclusion enumerated in section 212(a) of the Act. A lawful permanent resident may in fact be eligible for relief from deportation under section 212(c), even though he has not proceeded abroad subsequent to the acts which rendered him deportable. *See Francis v. INS*, 532 F.2d 268 (2d Cir. 1976); *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976).

The Service does not contest this respondent's statutory eligibility for relief under section 212(c).[2] Rather, the Service contends that a heightened discretionary test should apply to aggravated felons beyond the requirements set forth in *Matter of Marin*, 16 I&N Dec. 581, 582-83 (BIA 1978), and *Matter of Buscemi*, 19 I&N Dec. 628 (BIA 1988).

Section 212(c) of the Act does not provide an indiscriminate waiver for all who demonstrate statutory eligibility for such relief. Instead, the Attorney General or his delegate is required to determine as a matter of discretion whether an alien merits the relief sought, and the alien bears the burden of demonstrating that his application warrants favorable consideration. *Matter of Marin, supra.*

The exercise of discretion in a particular case necessarily requires consideration of all the facts and circumstances involved. There must be a balancing of the social and humane considerations presented in an alien's favor against the adverse factors evidencing his undesirability as a permanent resident. *Matter of Marin, supra*, at 584. The Board has enunciated numerous factors to be considered in determining whether or not to grant section 212(c) relief. Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred at a young age), evidence of hardship to the respondent and his family if deportation occurs, service in this country's armed forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character.

---

[2] We note that section 511(a) of the Immigration Act of 1990, 104 Stat. at 5052, amended section 212(c) of the Act to provide that a section 212(c) waiver of inadmissibility is not available to an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years. Such reference to the unavailability of a section 212(c) waiver to designated aggravated felons indicates that a section 212(c) waiver is available to others. *See Matter of Meza*, 20 I&N Dec. 257 (BIA 1991). Section 511(b) of the Immigration Act of 1990, 104 Stat. at 5052, further provides that this amendment "shall apply to admissions occurring after the date of the enactment of this Act."

*Id.* at 584–85. Among the factors deemed adverse to an alien are the nature and underlying circumstances of the exclusion or deportation ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country. *Id.* at 584. Moreover, one or more of these adverse considerations may ultimately be determinative of whether section 212(c) relief is in fact granted in an individual case. *Id.*

As the negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities. *Id.* at 585. Such a heightened showing is required when an alien has been convicted of a serious drug offense, particularly one relating to the trafficking or sale of drugs. *Id.* at 586 n.4. The necessity of demonstrating unusual or outstanding equities is not exclusively triggered by serious crimes involving controlled substances, however. Rather, one must examine the gravity of the offense per se. *Matter of Buscemi, supra; see also Matter of Edwards,* 20 I&N Dec. 191 (BIA 1990); *Matter of Marin, supra.* In addition, such a showing may be mandated because of a single serious crime, or because of a succession of criminal acts which together establish a pattern of serious criminal misconduct. *Matter of Buscemi, supra.* We observe that an alien who demonstrates unusual or outstanding equities, as required, does not compel a favorable exercise of discretion; rather, absent such equities, relief will not be granted in the exercise of discretion. *Matter of Buscemi, supra; see also Matter of Marin, supra.*

With respect to the issue of rehabilitation, a section 212(c) waiver applicant who has a criminal record will ordinarily be required to present evidence of rehabilitation before relief is granted as a matter of discretion. *Matter of Marin, supra,* at 588; *see also Matter of Buscemi, supra.* However, section 212(c) applications involving convicted aliens must be evaluated on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion. *Matter of Edwards, supra.* We recognize that it is more difficult for confined aliens to establish rehabilitation than for those who are at liberty, but this does not preclude us from considering rehabilitation as a significant discretionary factor. *See Matter of Edwards, supra; Matter of Marin, supra.*

The Service recommends that an applicant for section 212(c) relief who is an aggravated felon be required to meet the following heightened or additional test: a showing that the respondent is fully rehabilitated and that deportation would result in exceptional and

299

extremely unusual hardship to the respondent's spouse, parent, or child who is a lawful permanent resident or citizen of the United States. However, the Board finds that the present balancing test set forth in *Matter of Marin, supra, Matter of Buscemi, supra,* and *Matter of Edwards, supra,* adequately allows for determining the appropriate strength of the equities necessary to overcome an alien's crimes in view of their nature and seriousness. In *Matter of Marin, supra,* we stated that we require a heightened showing of offsetting equities when an alien has been convicted of a serious drug offense, particularly one relating to the trafficking or sale of drugs. *Id.* at 586 n.4. In *Matter of Buscemi, supra,* we recognized that such a showing may be mandated because of a single serious crime. However, we emphasized that the necessity of demonstrating unusual or outstanding equities is not exclusively triggered by serious crimes involving controlled substances, but rather upon examination of the gravity of the offense per se. Thus, we do not look to what ground of deportability or inadmissibility a particular crime comes within, but rather, the nature of the underlying crime itself in determining the degree of equities that will be required to overcome the crime. We also pointed out in *Matter of Buscemi, supra,* that a showing of unusual or outstanding equities does not compel a grant of section 212(c) relief, for in some cases, the seriousness of the crime may still not be overcome by the equities demonstrated.

Another issue raised on appeal is whether the respondent's sole conviction for felony sale of cocaine is sufficient to determine that he is a drug trafficker within the meaning of the Act. A drug trafficking crime is a felony punishable under the statutes enumerated in 18 U.S.C. § 924(c)(2) (1988). *Matter of Barrett, supra.* That section, as amended by section 6212 of the Anti-Drug Abuse Act of 1988, 102 Stat. at 4360, defines the term "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.)." The sale of cocaine is a felony punishable under the Controlled Substances Act, 21 U.S.C. § 801 et seq. (1988), and is therefore a drug trafficking crime. We have found nothing in the statutes listed above or in the applicable case law that requires more than one drug trafficking conviction to classify the respondent as a drug trafficker. We agree with the Service that the respondent's conviction for sale of cocaine brings him within the definition of a drug trafficker.

The only issue remaining for resolution in this case is whether the immigration judge properly granted the respondent's application for a section 212(c) waiver of inadmissibility as a matter of discretion. We

note that the immigration judge based his decision to grant 212(c) relief, in part, on his perception that the respondent's offense was the result of entrapment and that his guilty plea was made without knowledge of its potential effect on his immigration status. The Service points out that the immigration judge must look to judicial records to determine whether an alien has been convicted of a crime, and he may not determine on his own the alien's guilt or innocence. *Matter of Contreras,* 18 I&N Dec. 30 (BIA 1981); *see also Aguilera-Enriquez v. INS,* 516 F.2d 565 (6th Cir. 1975), *cert. denied,* 423 U.S. 1050 (1976). While inquiry may be had into the circumstances surrounding the commission of the crime in order to determine whether a favorable exercise of discretion is warranted, it is impermissible to go behind a record of conviction to reassess an alien's ultimate guilt or innocence. *Matter of Edwards, supra,* (citing *Matter of M-,* 3 I&N Dec. 804, 805 (BIA 1949)); *see also Trench v. INS,* 783 F.2d 181 (10th Cir.), *cert. denied,* 479 U.S. 961 (1986). In this case, the immigration judge's analysis, particularly as regards the issue of entrapment, directly related to the question of the respondent's ultimate guilt or innocence. Under these circumstances, we conclude that the immigration judge improperly considered the respondent's testimony on a theory of entrapment in exercising his discretion to grant section 212(c) relief.

After our independent review of the entire record of proceedings, including the transcript from the respondent's deportation hearing, we cannot agree with the immigration judge's assessment of the respondent's equities and the adverse factors presented against him. We conclude that a favorable exercise of discretion is not warranted under the facts of this case.

We find that the respondent's conviction for sale of cocaine constitutes an extremely serious adverse factor. As such, the respondent must demonstrate unusual or outstanding equities if he is to have the possibility of receiving a favorable exercise of discretion on his waiver application. *Matter of Buscemi, supra.* We conclude that the respondent has not demonstrated unusual or outstanding equities so as to offset the serious adverse factors in his record.

In the respondent's favor, we take into account the fact that he has resided in the United States for approximately 12 years. However, we do not find that this period is so lengthy as to constitute an unusual or outstanding equity, particularly where the respondent was an adult when he was first admitted to this country as a lawful permanent resident. The majority of the respondent's family reside in New York, and although none of them appeared to testify on his behalf, they did submit letters in support of his waiver request. We note that although the respondent has many close relatives residing lawfully in the United

States, he has been separated from his wife and their four children since 1987. Further, he admitted that he did not call or write to his wife since he was convicted in 1989. In addition, the respondent testified that he is not sure of the whereabouts of his 2-year-old son but believes that he is in the custody of the child's maternal grandmother, who supports him from her welfare income. In terms of the financial difficulties that his family may face due to his deportation, we note that none of the respondent's family appear to rely on him for financial support. The respondent admitted that between 1987 and 1989, he provided only occasional support of a minimal amount, and that since 1989, he has provided no support at all. In addition, his testimony regarding his 2-year-old son indicates that he does not provide any support for him. Therefore, the respondent has not shown that his family's financial situation will be materially altered if he is forced to depart from this country.

We do not consider the respondent's employment history to be an unusual or outstanding equity. The irregularity of his employment between 1987 and 1989 certainly impairs the significance of this factor. The respondent admits he has paid no income taxes since 1986. Additionally, he did not demonstrate that he has any business or property ties to this country. The respondent merely asserts that he would not be able to afford tools or real estate in Jamaica. Aside from this statement, he did not present any evidence that he would have difficulty residing in Jamaica. In fact, the respondent testified that he may have relatives living there, including his father and his aunt.

On the other hand, the respondent was convicted of sale of cocaine, an aggravated felony under the Act. Although he claims that he did not engage in drug trafficking for financial gain, his participation in such a transaction clearly demonstrates a serious disregard for the welfare of society. *See Matter of Edwards, supra.* Moreover, considering the recency and seriousness of the respondent's conviction, we would require a firm showing of rehabilitation from him before we could conclude that granting a waiver would be in the best interests of this country. *Matter of Marin, supra.* The respondent has been detained since he was sentenced for his felony conviction, with the exception of a 3-week period between imprisonment and Service custody. As previously stated, we recognize that it is more difficult for confined aliens to establish rehabilitation than it is for those who are at liberty, but this does not preclude us from considering the lack of rehabilitation as an adverse factor. *See Matter of Edwards, supra; Matter of Marin, supra.* The respondent pleaded guilty to the felony charge of sale of cocaine. At his hearing, the respondent appeared to be more intent in showing that he was "set up" for the crime of which he was convicted, than in expressing remorse for his acts. He has not

submitted any evidence of participation in a drug counselling program nor shown a desire to enroll in one. His assurances that he will not be involved with drug traffickers in the future does not demonstrate rehabilitation. We conclude that there is insufficient evidence in the record to show genuine rehabilitation on the part of the respondent.

After balancing the respondent's equities, which we do not find to be unusual or outstanding, against the adverse factor of his serious criminal conviction for the sale of a controlled substance, and our lack of confidence as to his rehabilitation, we conclude that he has not demonstrated that he warrants a favorable exercise of discretion.

Accordingly, the appeal will be sustained.

**ORDER:**     The appeal is sustained.

**FURTHER ORDER:**     The respondent shall be deported from the United States to Jamaica.

*CONCURRING IN PART AND DISSENTING IN PART:* Michael J. Heilman, Board Member

I respectfully concur in part and dissent in part.

The respondent has argued on appeal that a single conviction for a single sale of cocaine should not result in a finding that he is a drug trafficker for purposes of the "aggravated felony" definition set forth in section 101(a)(43) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43) (1988). The majority dismisses this argument as if it is self-evidently wrong. This is not surprising, as this Board has over a period of years moved to the position that anything other than possession for personal use constitutes "trafficking." This interpretation developed even before the 1990 amendment to section 101(a)(43) of the Act, which broadened the term "aggravated felony" to include sale of a controlled substance as "trafficking." Immigration Act of 1990, Pub. L. No. 101-649, § 501(a), 104 Stat. 4978, 5048.

While one can certainly continue to interpret "trafficking" to include everything but simple possession for personal use, the consequences of this interpretation should certainly give one pause. First, this interpretation covers the entire universe of drug transactions and results in the lumping in of the one-time sale of a small amount of marijuana with the organized distribution of large amounts of drugs. In doing so, this enormously broad interpretation fails to recognize fundamental differences in the infinite range of actions that can now be called "trafficking." It defies credulity that the average reasonable person would consider the ringleader of a heroin importation ring the moral or legal equivalent of an unemployed father who sells some marijuana for a few hundred dollars badly needed cash. But this is the net effect of an interpretation that categorizes fundamentally different actions as completely equivalent.

Previously this equivalence had severe consequences for permanent resident aliens who were charged with excludability under section 212(a)(23) of the Act, 8 U.S.C. § 1182(a)(23) (1988), because that was the only provision that proscribed "illicit trafficking" in controlled substances. Now, this term applies to permanent resident aliens charged with deportability under section 241(a)(4)(B) of the Act, 8 U.S.C. § 1251(a)(4)(B) (1988), and the universe of persons affected is tremendously expanded.

At the same time, the term "aggravated felony," a term of recent vintage, has also been expanded in scope to cover "traffic" in controlled substances. The result is that a person who would otherwise be rightfully treated under state or federal criminal law as a petty offender, the street-level seller of a small amount of cocaine or a "mule" transporting a small load of marijuana, is elevated to the remarkable status of an "aggravated felon" "illicit trafficker," upon whose head the most drastic immigration consequences may fall, a person treated the same as murderers, armed robbers, and rapists. Indeed, in one of those twists of absurdity for which the immigration laws of this country are rightfully, but shamefully, known, the person who sells a few grams of marijuana at any time after entry is an "aggravated felon," but a rapist who commits his crime 5 years after entry is not even deportable; neither is an armed robber or a person who commits manslaughter.

If this situation seems bizarre, perhaps even unconscionable, then the interpretation favored by the majority should be considered in this light. A provision whose application may be draconian is best applied with some consideration of decency. It is also best applied with as narrow an interpretation as possible. It has indeed been well understood in the immigration law that the consequences of deportation necessitate a narrow interpretation, with any ambiguity in terms construed in the alien's favor. As the Supreme Court has stated:

> [D]eportation is a drastic measure and at times the equivalent of banishment or exile. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty. To construe this statutory provision less generously to the alien might find support in logic. But since the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used.

*Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948) (citation omitted); *see also INS v. Errico*, 385 U.S. 214, 225 (1966); *Woodby v. INS*, 385 U.S. 276, 285 (1966). "This principle has been widely invoked in deportation cases, and it requires the courts to interpret all aspects of the immigration laws ... liberally in favor of the alien." *Squires v. INS*, 689 F.2d 1276, 1280 (6th Cir. 1982).

All of these considerations are present in abundance in this case, but this well-established principle of statutory construction is given no

effect by the majority. With these thoughts in mind, I would construe "traffic" and "trafficking" to mean more than a single sale of a small amount of drugs, as the respondent proposes here, to give it the meaning normally associated with the term "trafficking," which is the business of buying and selling. If I sell a chair at a yard sale, I am no more trafficking in furniture than a child who sells lemonade one warm day is trafficking in lemonade.

The second aspect of the majority's opinion that I cannot join in is its application of *Matter of Edwards*, 20 I&N Dec. 191 (BIA 1990), in regard to the matter of rehabilitation. The majority states that it "would require a firm showing of rehabilitation from him before we could conclude that granting a waiver would be in the best interests of this country." The majority concludes that it lacks "confidence as to his rehabilitation." It may well be that most people would lack confidence. In my estimation, the great majority of aliens who have had their deportation hearing shortly after release from criminal custody are unable to make a highly persuasive case for reformation. Unlike the majority, however, I would not treat rehabilitation as a requirement, but rather as an equity. If it exists, it is a positive factor to be balanced against the negative factors; the greater the evidence of rehabilitation, the greater the equity. If rehabilitation cannot be found, then the respondent has simply failed to establish an equity, and this failure will not be held against him as an adverse factor.

In this sense, rehabilitation would be like any other equity the respondent might wish to present for consideration. It might well be that the failure to establish rehabilitation would swing the balance against the respondent. This would occur, however, not because rehabilitation is a requirement, but because the adverse criminal record is so substantial that one or two outstanding equities alone would not suffice. Some other equity might be considered where rehabilitation is not established.

Although I do not agree that the respondent is a drug trafficker because he has a single conviction for sale of cocaine, he is nonetheless deportable under section 241(a)(11) of the Act, as one who was convicted of sale of a controlled substance. Under *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978), this is a serious offense, which requires the respondent to establish outstanding or unusual equities. In this regard, I agree with the majority that the respondent's length of residence, family ties, and employment history do not rise to this level. I would sustain the appeal on these grounds.

305