[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13103

_____

Agency No. A201-060-115

LILA RAJ GAUTAM,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 26, 2021)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

MARTIN, Circuit Judge:

Lila Raj Gautam seeks review of a Board of Immigration Appeals ("BIA")

decision affirming the Immigration Judge's ("IJ") denial of his petition for asylum,

withholding of removal, and relief under the Convention Against Torture ("CAT"). After careful consideration and with the benefit of oral argument, we deny his petition.

## I.    FACTUAL BACKGROUND

Mr. Gautam is a native and citizen of Nepal and is a member of the Nepali Congress Party ("NPC"). The NPC opposes the Maoist Party, which has been in and out of power in Nepal over the past twenty years. In 2000, while still living in Nepal, Mr. Gautam was arrested for the rape and murder of a young woman. He was detained for ten months. Although Mr. Gautam was acquitted by the trial court and the appellate court affirmed his acquittal, the Nepalese Supreme Court convicted him in 2009 and sentenced him to twenty years in prison. Mr. Gautam maintains that he did not learn of the Supreme Court's ruling until 2017, when family members sent him newspaper articles describing the government's efforts to find him.

Mr. Gautam first entered the United States in May 2010 and first applied for asylum in March 2011. In that application, he stated he had previously been arrested but did not elaborate. He attached a correction sheet indicating that he had never been accused, charged, or arrested for any crime. Mr. Gautam's application went before an IJ, who credited Mr. Gautam's testimony and granted him asylum

on the basis that he had a reasonable fear of persecution based on his association with the NPC.

In November 2017, INTERPOL issued a notice indicating that Mr. Gautam was wanted in Nepal where he was supposed to serve a twenty-year sentence for murder. The Department of Homeland Security arrested Mr. Gautam and charged him as removable for committing a crime involving moral turpitude and for procuring a benefit—asylum—by fraud or willful misrepresentation. An IJ sustained both charges. Mr. Gautam also filed a new I-589 application for asylum, withholding of removal, and CAT relief. In this application, Mr. Gautam asserted that he had been persecuted by the Maoists in Nepal based on his membership in the NPC and his religious designation as a Brahmin. He also stated that his arrest and subsequent conviction for murder were themselves forms of political persecution.

At his merits hearing before the IJ, Mr. Gautam testified that he only recently learned of his conviction. Mr. Gautam said he failed to disclose the conviction earlier because he relied on his attorneys to fill out his forms. Mr. Gautam testified that in his original asylum application, he never spoke with his attorney using a translator, that he did not understand most of the documents he signed and that he had never seen the supplement indicating he had never been arrested. He claimed he signed his adjustment of status form without reading it

3

which is why it said he had never been arrested. He later said he did review the form but assumed the question referred only to incidents within the United States. He also stated that if he returned to Nepal, he would either have to pay a fine or would be imprisoned and killed.

Mr. Gautam also recounted his run-ins with Maoists in which he says he was persecuted because of his membership in the NCP. Mr. Gautam claimed there was a "[b]ig conspiracy" against him that resulted in his conviction for murder, but not his codefendants who were also convicted. Mr. Gautam initially testified that he had never seen the corpse of the murder victim, but when confronted with a statement he made to the Nepalese police, he explained he had seen her body after she was killed.

In addition to his testimony and numerous reports about the history and politics of Nepal generally, Mr. Gautam submitted a Wikipedia page describing the Nepalese Supreme Court, the trial court record for his murder trial, a copy of the appellate court record, the record from the Supreme Court's review, and the arrest warrant. There is no indication on the face of the court documents that Mr. Gautam's conviction was politically motivated.

The IJ found Mr. Gautam not credible due to his consistent failure to disclose his arrest, the internal inconsistencies in his testimony, and the inconsistencies between the testimony he presented at this hearing and the

testimony he presented at his original asylum hearing in 2014.  The IJ found Mr. Gautam removable because his conviction for murder constitutes a particularly serious crime, making him statutorily ineligible for asylum and withholding of removal.  The IJ also found that Mr. Gautam had not met his burden for deferral of removal under CAT because he failed to show that it was more likely than not that he would be tortured in Nepal.

The BIA affirmed the IJ's finding that Mr. Gautam was removable because his conviction for murder constituted a particularly serious crime.  The BIA reasoned that whatever Mr. Gautam might say about his innocence, Matter of Roberts, 20 I. & N. Dec. 294 (BIA 1991), prevented the BIA from going "behind a record of conviction to reassess an alien's ultimate guilt or innocence."  Id. at 301.  The BIA then affirmed the IJ's denial of Mr. Gautam's claims for asylum, withholding, and CAT relief because the agency agreed that Mr. Gautam's testimony was not credible and that his supporting documentation alone did not carry his burden to support his claims for relief.

Mr. Gautam timely petitioned for review of the BIA's decision.

## II.    STANDARD OF REVIEW

To the extent that the BIA expressly adopted the opinion of the IJ, we review both the decisions of the BIA and the IJ.  Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009).  We review de novo legal determinations and we

5

review credibility determinations and other administrative fact findings under the substantial evidence test. Id. We will affirm findings that are "supported by reasonable, substantial, and probative evidence on the record considered as a whole," viewing "the record evidence in the light most favorable to the agency's decision and draw[ing] all reasonable inferences in favor of that decision." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation marks omitted).

### III.    DISCUSSION

Mr. Gautam argues that the BIA erred on two fronts. First, he says the BIA failed to consider whether his conviction for murder itself constitutes persecution that renders him eligible for asylum and withholding of removal. Second, he says he provided sufficient evidence to be entitled to relief under CAT. We address each in turn.

### A.    MR. GAUTAM FAILED TO ESTABLISH THAT HE IS ELIGIBLE FOR ASYLUM OR WITHHOLDING OF REMOVAL.

Mr. Gautam argues that the BIA erred when it refused to consider the evidence he presented that his conviction for murder was a form of political persecution.[1] Mr. Gautam does not challenge the BIA's denial of asylum and

---

[1] The government argues that Mr. Gautam has abandoned his argument that the BIA should have reassessed his guilt because he does not squarely challenge the BIA decision that the agency relied upon when it declined to do so. However, Mr. Gautam has clearly challenged the BIA's decision not to consider the evidence of his innocence and so has preserved that argument.

6

withholding of removal on any other grounds, nor does he challenge the BIA's adverse credibility finding against him.  Indeed, Mr. Gautam devotes most of his brief to arguing that he is in fact innocent.

A noncitizen seeking to establish eligibility for asylum must show they are a "refugee" within the meaning of the Immigration and Nationality Act.  8 U.S.C. § 1158(b)(1)(B)(i).  The statute requires noncitizens to show that they are outside their country of nationality and are "unable or unwilling to return to, and [are] unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1231 (11th Cir. 2007) (quoting 8 U.S.C. § 1101(a)(42)(A)).  To establish eligibility for asylum based on past persecution, the noncitizen must prove (1) he was persecuted and (2) the persecution was on account of a protected ground.  De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1007 (11th Cir. 2008) (citing 8 C.F.R. § 208.13(b)(1)).  The remedy of withholding of removal requires the noncitizen to meet a higher burden of proof.  He must show it is "more likely than not" that he would be persecuted on account of a protected ground if returned.  Sanchez Jimenez, 492 F.3d at 1238 (quotation marks omitted).

7

Mr. Gautam argues that the Nepalese Supreme Court's 2009 decision convicting him of murder was itself a form of persecution that entitles him to asylum and withholding of removal. Mr. Gautam describes a purported Maoist plot to frame him for a murder he did not commit because of his association with an opposition party.

The problem for Mr. Gautam is that even if the BIA did look at the records from his criminal case in Nepal, those records do not provide evidence that his conviction was politically motivated. Mr. Gautam goes to great lengths to argue that the proceedings before the Nepalese Supreme Court were deficient and that the evidence against him was weak. But even if these claims were beyond doubt, Mr. Gautam would still have to show he was convicted on account of a protected ground. See De Santamaria, 525 F.3d at 1007. The only evidence Mr. Gautam offered before the BIA linking his conviction to his political beliefs is his own testimony and speculation that the conviction must have been politically motivated. However, the BIA found Mr. Gautam's testimony not credible, and because Gautam offers no evidence to contest the adverse credibility finding he has waived any opportunity to challenge it. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned."). Thus, even assuming the BIA could review the evidence Mr. Gautam presents as to his innocence, that evidence would not show

8

that Mr. Gautam's conviction was on account of a protected ground.  Mr. Gautam

is therefore not eligible for asylum or withholding of removal.

B.    SUBSTANTIAL EVIDENCE SUPPORTS THE BIA'S FINDING THAT
      MR. GAUTAM IS INELIGIBLE FOR CAT DEFERRAL.

Mr. Gautam next argues that the BIA erred in denying him deferral of

removal under CAT.  CAT deferral is distinct from asylum in a number of

respects.  First, it is mandatory.  Once the noncitizen has met his evidentiary

burden, the government must grant him deferral.  See 8 C.F.R. § 1208.16(c)(4).

Second, the noncitizen need not be subject to torture because of a protected

ground; the fact that it is more likely than not that he is going to be tortured is

sufficient.  See 8 C.F.R. § 208.17(a); Matter of S-V-, 22 I. & N. Dec. 1306, 1311–

13 (BIA 2000).  And there are no criminal or other bars to CAT deferral.  See

generally 8 C.F.R. § 208.17.  The noncitizen has the burden to show that it is

"more likely than not" that he will be tortured upon removal.  See 8 C.F.R. §

208.16(c).

Mr. Gautam claims he met his evidentiary burden by providing a Nepalese

police report, statements from fellow NCP members and his family, as well as

country conditions reports.  He notes that the country conditions reports describe

the lack of accountability for human rights violations in Nepal, including the fact

that torture is not explicitly criminalized.

The BIA addressed Mr. Gautam's CAT deferral claim separately from his asylum and withholding of removal claims.  The BIA noted that, according to Mr. Gautam's own testimony, he might not even have to serve any time in prison and may just have to pay some money upon return to Nepal.  Thus all his evidence about mistreatment of detainees in Nepal, alone, was not enough to carry his high evidentiary burden.

Further, while the abuse that the reports describe in Nepalese prisons is undoubtedly disturbing, it does not fit the definition of torture under CAT.  CAT defines torture as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person," 8 C.F.R. § 208.18(a)(1), and "does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions" including "judicially imposed sanctions and other enforcement actions authorized by law."  Id. § 208.18(a)(3).  Torture is "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture."  Id. § 208.18(a)(2) (emphasis added).  Inadequate prison conditions do not alone meet this definition.  See Cadet v. Bulger, 377 F.3d 1173, 1192–96 (11th Cir. 2004) (holding that indefinite detention, poor prison conditions, and "[b]eatings with fists, sticks, and belts" in Haitian prisons did not amount to torture).  Thus even if Mr. Gautam could prove that he would be subject to some kind of physical abuse

in prison, he would have to show that it would constitute some kind of extreme physical or mental violence. And the only evidence Mr. Gautam offers to support his claim that he will be killed in prison is his own testimony, which both the IJ and BIA found not credible. And not only does Mr. Gautam not contest his adverse credibility finding, but he also testified that he might not be sent to prison at all. Thus even if his testimony were credible, he would not meet his burden to show that he would more likely than not be subject to torture upon removal to Nepal.

**PETITION DENIED.**