# In re Carlos VASQUEZ-MUNIZ, Respondent

## File A36 621 740 - Eloy

*Decided December 1, 2000*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Possession of a firearm by a felon in violation of section 12021(a)(1) of the California Penal Code is not an aggravated felony under section 101(a)(43)(E) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(E) (1994), because it is not an offense "described in" 18 U.S.C. § 922(g)(1) (1994).

Frank T. Morell, Esquire, Chula Vista, California, for respondent

Wilford Calero, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; HOLMES, HURWITZ, VILLAGELIU, ROSENBERG, GUENDELSBERGER, GRANT, MOSCATO, and MILLER, Board Members. Dissenting Opinions: SCIALABBA, Vice Chairman; joined by HEILMAN, FILPPU, COLE, MATHON, and JONES, Board Members.[1]

HOLMES, Board Member:

In a decision dated November 2, 1999, an Immigration Judge found that the respondent was subject to removal under section 237(a)(2)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(C) (Supp. IV 1998), as an alien convicted of a firearms offense, but not under section 237(a)(2)(A)(iii) of the Act, as an alien convicted of an aggravated felony. The Immigration Judge further determined that the respondent was statutorily eligible for cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (Supp. IV 1998), and that such relief should be granted in the exercise of discretion. The Immigration and Naturalization Service

---

[1]Fred W. Vacca, Board Member, participated in the deliberations concerning this case, but retired prior to the issuance of the final decision. Noel A. Brennan, Cecelia M. Espenoza, and Juan P. Osuna, Board Members, did not participate in this decision.

has appealed from this decision. The appeal will be dismissed. The request for oral argument is denied. 8 C.F.R. § 3.1(e) (2000).

## I. FACTS

The facts of this case are not significantly in dispute. The respondent was admitted to the United States as a lawful permanent resident in 1978 when he was 5 years old. In 1991, when he was 18 years old, the respondent was convicted of robbery in California and was sentenced to 180 days in jail and 36 months of probation. On December 19, 1996, the respondent was convicted in the Superior Court of California for the County of Los Angeles of "possession of a firearm by a felon - one prior" in violation of section 12021(a)(1) of the California Penal Code, which provides as follows:

> Any person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 12001.6, . . . who owns or has in his or her possession or under his or her custody or control any firearm is guilty of a felony.

Cal. Penal Code § 12021(a)(1) (West 1996). According to court records, the respondent was sentenced to the "low term" of 32 months in prison as a result of this conviction.

On August 11, 1999, the Service issued a Notice to Appear (Form I-862) and instituted removal proceedings against the respondent. He was initially charged with removability under section 237(a)(2)(C) of the Act as an alien convicted of a firearms offense. The Service subsequently lodged an additional charge of removability under section 237(a)(2)(A)(iii), alleging that the respondent was convicted of an aggravated felony as defined in section 101(a)(43)(E)(ii) of the Act, 8 U.S.C. § 110l(a)(43)(E)(ii) (1994). This provision includes within the definition of "aggravated felony"

> an offense described in—
>
> . . .
>
> (ii) sections 922(g)(1), (2), (3), (4), or (5), (j), (n), (o), (p), or (r) or 924(b) or (h) of title 18, United States Code (relating to firearms offenses).

Section 101(a)(43)(E)(ii) of the Act.

During the course of the proceedings, the respondent admitted the facts alleged in the Notice to Appear, conceded that he was removable under section 237(a)(2)(C) of the Act as a result of his conviction for a firearms offense, but denied removability on the aggravated felony charge. The Immigration Judge asked the Service attorney to identify which of the

offenses referenced in section 101(a)(43)(E)(ii) was the basis for the aggravated felony charge. The Service attorney stated that it was 18 U.S.C. § 922(g)(1) (1994).[2] The Immigration Judge noted that "affecting interstate commerce" is an element of the offense under § 922(g), but that this was not an element of the respondent's crime under section 12021(a)(1) of the California Penal Code. However, the Service argued before the Immigration Judge that there is a presumption that any weapon manufactured in the United States or abroad affects interstate commerce and that it was the respondent's burden to establish that the weapon he possessed "was produced locally, . . . never was shipped anywhere else, . . . wasn't sold or bought across state lines, thereby not affecting interstate commerce." The Immigration Judge was not persuaded by the Service's argument in this regard. Accordingly, he found that the respondent was eligible to apply for cancellation of removal under section 240A(a) of the Act and allowed him to fully present his application for relief from removal.

## II.  IMMIGRATION JUDGE'S DECISION

In his November 2, 1999, decision, the Immigration Judge ruled that the Service had not met its burden of establishing that the respondent was removable as an alien convicted of an aggravated felony within the definition of section 101(a)(43)(E)(ii) of the Act. The Immigration Judge held that the respondent's conviction under section 12021(a)(1) of the California

---

[2]We note that 18 U.S.C. § 922(g), referred to in section 101(a)(43)(E)(ii) of the Act, provides in pertinent part as follows:

  It shall be unlawful for any person—

  (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

  (2) who is a fugitive from justice;

  (3) who is an unlawful user of or addicted to any controlled substance . . . ;

  (4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

  (5) who, being an alien, is illegally or unlawfully in the United States;

  . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. §§ 922(g)(1)-(5).

Penal Code was not a conviction for an offense "described in" 18 U.S.C. § 922(g)(1) because it lacked "the essential elements of affecting commerce." The Immigration Judge ruled alternatively, and more broadly, that to be subject to removal based on a conviction for an aggravated felony as defined in section 101(a)(43)(E)(ii) of the Act, an alien must have been convicted of one of the federal offenses specified therein. The Immigration Judge additionally found that the respondent had adequately demonstrated that a grant of relief under section 240A(a) of the Act was warranted as a matter of discretion. Accordingly, he granted the respondent's application for cancellation of removal and terminated removal proceedings.

## III. SERVICE'S ARGUMENTS ON APPEAL

The Service has appealed from the Immigration Judge's finding that the respondent was not removable as an alien convicted of an aggravated felony and was therefore statutorily eligible to apply for cancellation of removal under section 240A(a) of the Act.[3] The Service acknowledges that in order to obtain a conviction under 18 U.S.C. § 922(g)(1), it must be established that (1) the defendant was previously convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate or foreign commerce. *See United States v. Taylor*, 113 F.3d 1136, 1144 (10th Cir. 1997). The third element is often referred to as the "jurisdictional element," which brings the criminal provision within federal legislation power under the Commerce Clause of the United States Constitution. *See* U.S. Const. art. I, § 8, cl. 3; *see also United States v. Lopez*, 514 U.S. 549, 561 (1995); *United States v. Bass*, 404 U.S. 336 (1971). The Service argues that it need not establish that the state offense of which the respondent was convicted contains a federal "jurisdictional element" to bring it within the definition set forth in section 101(a)(43)(E)(ii) of the Act. Rather, it asserts that only the first two "substantive" elements necessary for a conviction under 18 U.S.C. § 922(g)(1) must be established for a state offense to be deemed an offense "described in" § 922(g)(1).

In this regard, the Service notes that the starting point of statutory interpretation must be the language employed by Congress, and that it is assumed that the legislative intent and purpose of Congress is expressed by the ordinary meaning of the words used. *INS v. Cardoza-Fonseca*, 480 U.S.

---

[3]The Service does not argue that the respondent is otherwise ineligible for cancellation of removal under section 240A(a) of the Act, and it has not contested the Immigration Judge's favorable exercise of discretion regarding his application for relief. The respondent has not submitted a brief on appeal.

421 (1987). "In its ordinary sense," the Service argues, the phrase "'described in'[in section 101(a)(43)(E)(ii) of the Act] means that which is analogous or similar in nature to that which is being compared." It urges that if Congress had intended to require the Service to prove there was a federal "jurisdictional element" in a state crime of which an alien has been convicted, Congress would have so stated in the language of section 101(a)(43), or it simply would have required conviction for a federal crime to establish removability under section 101(a)(43)(E)(ii).

As further support for its position, the Service analogizes the firearms provisions of 18 U.S.C. § 922 to the Controlled Substances Act, 18 U.S.C. § 801 (1994), observing that both implicate Congress' authority to regulate interstate commerce. It asserts that

> [d]espite the federal jurisdictional implications within the Controlled Substances Act, neither the Board nor Federal Courts have ever required that in order to establish removability pursuant to Section 101(a)(43)(B) of the Act, the Service had to somehow establish that the state crime for which the alien was being deported had some sort of analogous federal "jurisdictional element" within it or federal jurisdictional implications within its statutory framework.

Moreover, the Service notes that the "aggravated felony" definition in section 101(a)(43) provides that "[t]he term applies to an offense described in this paragraph whether in violation of Federal or State law." According to the Service, the Immigration Judge's ruling in this case renders this language in section 101(a)(43) "superfluous and meaningless." The Service thus contends

> that when looking at the phrase "described in" within the context of the aggravated felony provisions and in looking at precedent Board decisions, there are no requirements or decisions requiring that the Service establish that the state crime for which the alien was convicted, had, within it, a federal "jurisdictional element" or analogous federal jurisdictional implications.

In addition, the Service submits that the Immigration Judge erred in his alternative finding that, in order to sustain a charge pursuant to section 101(a)(43)(E)(ii) of the Act, the Service must establish that the respondent had a federal conviction for a violation of 18 U.S.C. § 922(g)(1). In this regard, the Service notes that section 101(a)(43)(P) of the Act states, in part, that an aggravated felony is "an offense (i) which either is falsely making, forging, counterfeiting, mutilating, or altering a passport or instrument *in violation of* section 1543 of title 18, United States Code." (Emphasis added.) The phrase "in violation of" can only be satisfied by a conviction under the specified federal criminal provision. The Service argues that because Congress specifically used the phrase "described in" rather than the phrase "in violation of" in section 101(a)(43)(E), it made clear that a conviction under 18 U.S.C. § 922(g)(1) is not needed to sustain a charge of

removability under section 101(a)(43)(E)(ii). Finally, the Service asserts that the respondent is statutorily ineligible for cancellation of removal under section 240A(a) of the Act because he has been convicted of an aggravated felony.

## IV. ANALYSIS

This case presents yet another issue arising from the "aggravated felony" definition in section 101(a)(43) of the Act. We note at the outset that there is no dispute that the element in 18 U.S.C. § 922(g)(1) pertaining to interstate or foreign commerce is the "jurisdictional element" designed to bring this criminal provision within Congress' power to regulate under the Commerce Clause. *See United States v. Lopez*, *supra*, at 561. Characterizing it as such, however, does not change the fact that it is an element of the offense, nor does it answer the question whether an offense can be deemed an offense "described in" 18 U.S.C. § 922(g)(1) unless it includes an element pertaining to interstate or foreign commerce.

At issue in this case is the meaning of the phrase "described in" as it is used in section 101(a)(43)(E) of the Act.[4] Interpretation of statutory language begins with the terms of the statute itself. If those terms, on their face, constitute a plain expression of congressional intent, they must be given effect. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). It must be assumed that the legislative purpose is "'expressed by the ordinary meaning of the words used.'" *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962)). The Service agrees and argues that in "its ordinary sense, 'described in' means that which is analogous or similar in nature to that which is being compared." However, the Service offers no citation of authority for this definition of the phrase "described in." Nor does it identify any statutory or regulatory provision in which this phrase is used with such a connotation.

The word "describe" is defined as follows: "To narrate, express, explain, set forth, relate, recount, narrate, depict, delineate, portray [or] sketch." *Black's Law Dictionary* 445 (6th ed. 1990). It is also thus defined: "To represent by words written or spoken; . . . to state in detail the particulars of." *Webster's New International Dictionary* 706 (2d ed. 1959). The phrase "described in" is used in numerous sections of the Immigration and Nationality Act and the regulations. We have found no instance in which it

---

[4]The term "described in" is also used in sections 101(a)(43)(D), (E), (H), (I), (J), (K)(ii), (iii), (L), (M)(ii), (N), and (O) of the Act.

is used in a manner consistent with the Service's proffered definition. *See, e.g.*, sections 101(b)(1)(E)(ii), (f)(3), 204(a)(1)(A), (B), 210(b)(7)(B), 216(c)(1)(A), 236(c)(2), 245(c), (e)(1) of the Act, 8 U.S.C. §§ 1101(b)(1)(E)(ii), (f)(3), 1154(a)(1)(A), (B), 1160(b)(7)(B), 1186a(c)(1)(A), 1226(c)(2), 1255(c), (e)(1) (1994 & Supp. IV 1998); *see also* 8 C.F.R. §§ 1.1(t), 204.6(j)(3)(ii), 236.1(c)(8), 240.26(b)(1)(i)(E) (2000).[5]  Each usage of the phrase "described in" in these statutory and regulatory provisions reflects a more specific meaning than something merely "similar to" that which is referenced; rather, in each instance, the phrase "described in" clearly refers to something *specifically* set forth elsewhere in the statute or regulation. *Id.*

Moreover, the phrase "described in" is regularly used in Title 18 of the United States Code.  In each provision that we have reviewed, the phrase is used with a meaning more precise than that argued by the Service, i.e., it is used to refer to a matter *specifically* delineated elsewhere in the law. *See, e.g.*, 18 U.S.C. §§ 521, 921(a)(33)(B)(II), 924(d)(3)(C), (D), (E), 932(d), 1831(a)(4), (5), (b), 1832, 3142(e)(1), (f)(1)(D), 3551, 3554, 3591(a)(1), 3592(b), 3593(a), 3607, 3663(c)(1), 5032, 5038(d) (1994 & Supp. IV 1998).  In fact, in various of these provisions, it is clear that the phrase is used to refer to an individual actually convicted under the referenced section of law, because the usage occurs in a sentencing or postsentencing provision. *See, e.g.*, 18 U.S.C. §§ 3551, 3554, 3591(a)(1), 3592(b), 3593(a), 3607, 3663(c)(1).  Accordingly, we are not persuaded by the Service's argument that the term "described in" can be rather loosely construed to mean something that is "analogous or similar in nature to that which is being compared," but which need not actually meet the description of the matter to which it refers.  In the case before us, it is not disputed that the elements of the pertinent state crime of which the respondent was convicted do not include all three of the elements necessary for conviction of the federal offense described in 18 U.S.C. § 922(g)(1).

The Service argues that if Congress had intended to require it to establish that there was a federal "jurisdictional element" in a state crime of which an alien has been convicted, Congress would have explicitly included language to that effect in section 101(a)(43)(E) of the Act.  However, to accept this argument, we would be obliged to read an additional clause into the actual language in section 101(a)(43)(E), which would exclude from the description of the referenced offense any element that gives rise to federal jurisdiction.  This would, in effect, be an administrative redrafting of the language of section 101(a)(43).  Moreover, where Congress has wished to

---

[5]These referenced provisions, which are simply representative of many others in the Act and the regulations that employ the term "described in," will not be set forth in this decision.

include such language, it has done so explicitly. For example, 18 U.S.C. § 3142(e)(1) pertains to the release or detention of a defendant in federal criminal proceedings pending trial. That section provides in part that, in a case described in § 3142(f)(1), a rebuttable presumption arises that no condition or combination of conditions can reasonably assure the safety of any other person and the community if a judicial officer finds that

> the person has been convicted of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that *would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed.*

18 U.S.C. § 3142(e)(1) (emphasis added); *see also* 18 U.S.C. § 3142(f)(1)(D) (referring to "two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed"); 18 U.S.C. § 5032 (referring to offenses "described in" various federal statutes and additionally referencing an act "which if committed by an adult would have been one of the offenses set forth in this paragraph or an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed").

Thus, where Congress has referred to crimes "described in" federal statutes, but has wished to exclude from the described crime the element giving rise to federal jurisdiction, it has done so explicitly. Given this fact, the ordinary meaning of the phrase "described in," and the manner in which this phrase has customarily been used in federal laws and regulations, we cannot find adequate support for the Service's position that an element of the crime "described in" 18 U.S.C. § 922(g)(1) can simply be ignored. Whatever Congress' ultimate intent may have been in this regard, we are bound to follow the express language of the statute.[6]

The Service argues that such a conclusion is inconsistent with the Board's previous rulings with regard to deportability resulting from an alien's conviction for an aggravated felony described in section 101(a)(43)(B) of the Act. *See, e.g.*, *Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995); *Matter of Davis*, 20 I&N Dec. 536 (BIA 1992); *Matter of De La Cruz*, 20 I&N Dec. 346 (BIA 1991); *Matter of Roberts*, 20 I&N Dec. 294 (BIA 1991); *Matter of Barrett*, 20 I&N Dec. 171 (BIA 1990). However, the

---

[6]We have not been directed to any legislative history in support of the Service's position. The only pertinent federal court decision we have located did not decide whether the "obvious difference" between 18 U.S.C. § 922(g), which requires an interstate or foreign commerce element, and a Washington State crime, which did not, "matters, or whether it is merely a jurisdictional basis not essential to whether the state crime is an aggravated felony." *United States v. Sandoval-Barajas*, 206 F.3d 853, 856 (9th Cir. 2000).

definition set forth in section 101(a)(43)(B) of the Act is not formulated in the same manner as that in section 101(a)(43)(E). We find no inconsistency in this regard.

The Service argues further that the Immigration Judge's decision renders "superfluous and meaningless" the language of section 101(a)(43), which states that the term "aggravated felony" "applies to an offense described in this paragraph whether in violation of Federal or State law." However, this is not the case. This language makes clear that an offense that *meets the description* in one of the subsections of section 101(a)(43) is an aggravated felony whether the crime is in violation of federal or state law. This phrase does not mean that every subsection of section 101(a)(43) necessarily describes an offense in violation of both federal and state law. In fact, it is clear that such is not the case. *See, e.g.*, sections 101(a)(43)(L), (N) of the Act.

We note that it was once a matter of dispute whether a previous version of the aggravated felony definition in section 101(a)(43), which referenced "any drug trafficking crime as defined in [18 U.S.C. § 924(c)(2)]," was limited to federal "drug trafficking crimes." *See Matter of Barrett*, *supra*, at 172-73. In *Barrett*, a majority of the Board concluded that it was not so limited. In that case, the record was remanded to the Immigration Judge for a determination whether the respondent's state conviction "include[d] *all the elements* necessary for a conviction under 21 U.S.C. § 841(a)(1)." *Id.* at 178 (emphasis added). The definition of an aggravated felony in section 101(a)(43) of the Act was thereafter amended by Congress to include the above-quoted language in order to codify the ruling of the Board in *Matter of Barrett*. *See Matter of Davis*, *supra*, at 540 n.3.[7]

---

[7]Perhaps the strongest argument in support of the Service's position would be that the referenced language in section 101(a)(43) is simply another manner of stating that the aggravated felony definition includes any state offense that "would have been an offense described in . . . this section if a circumstance giving rise to Federal jurisdiction had existed." 18 U.S.C. § 3142(e)(1). However, we do not find an adequate basis arising from the actual language used in section 101(a)(43) to construe the provision in this manner, particularly as it sets forth a reasonable meaning as drafted.

We have addressed the arguments advanced by the appellant rather than those separately formulated by the dissent. Nonetheless, we are not persuaded by the dissent's argument, in which it is straightforwardly admitted that the provisions in question "are not artfully drafted." *Matter of Vasquez-Muniz*, 22 I&N Dec. 1415, at 1425 (BIA 2000) (Scialabba, dissenting). The dissent rightfully focuses on the provision in section 101(a)(43) of the Act that states that the term aggravated felony "applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country." We agree that the strongest argument that can be marshaled for the Service's ultimate position arises from this language. However, this provision does not state that *every* subsection in section 101(a)(43) necessarily has a possible state or foreign counterpart and, as the dissent acknowledges, such is not the case. *See* section 101(a)(43)(P)(i) of

Accordingly, we are not persuaded that the Immigration Judge erred in finding that the respondent's conviction under section 12021(a)(1) of the California Penal Code is not a conviction for an offense "described in" 18 U.S.C. § 922(g)(1), because the elements of the state offense do not adequately match those "described in" this federal law. Therefore, we affirm the Immigration Judge's finding that the Service failed to establish that the respondent has been convicted of an aggravated felony.

In view of our holding in this regard, we do not find it necessary to address the broader ruling of the Immigration Judge on the question whether the phrase "described in" in section 101(a)(43) of the Act requires that a conviction be pursuant to one of the specified federal statutes in order to qualify as an aggravated felony. However, we note that the Service's argument on this point has significant force, given the usage of the phrase "in violation of" in section 101(a)(43)(P)(i), which is not used elsewhere in section 101(a)(43), and which more clearly reflects that a conviction under 18 U.S.C. § 1543 is required. *See also* section 241(a)(4)(B)(ii) of the Act, 8 U.S.C. § 1231(a)(4)(B)(ii) (Supp. IV 1998); *United States v. Sandoval-Barajas*, 206 F.3d 853 (9th Cir. 2000).

## V.  CONCLUSION

The Service's sole basis for contesting the Immigration Judge's grant of cancellation of removal to the respondent under section 240A(a) of the Act is that the respondent is statutorily ineligible for such relief as a result of his conviction for an aggravated felony. Because we are not persuaded that the respondent has been convicted of an aggravated felony, we do not find him

---

the Act. Rather, this sentence refers to any offense "described in this paragraph," which returns one to the meaning of this "described in" language used in various places in section 101(a)(43). Does this provision clarify that those state or foreign offenses that actually meet the definition of an offense "described in" a specific subsection of section 101(a)(43) are aggravated felonies, a matter that was once in dispute? Notably, there are many such offenses (e.g., murder, rape, sexual abuse of a minor, drug trafficking, crimes of violence, theft, and burglary), and they include the vast majority of the aggravated felonies actually at issue in removal proceedings. Or, as the dissent contends, is this phrase properly read as stating that every subsection of section 101(a)(43) may have a state and foreign counterpart so long as the state or foreign law is an offense "described in" the subsection *but for* any federal "jurisdictional" element in the "described" offense? We ultimately are not persuaded that this latter reading is supported by the plain language of the statute, particularly as this provision has a significant meaning without being so construed and given the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." *INS v. Cardoza-Fonseca*, *supra*, at 449 (citing *INS v. Errico*, 385 U.S. 214, 225 (1966); *Costello v. INS*, 376 U.S. 120, 128 (1964); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948)).

statutorily ineligible for cancellation of removal on this basis. Accordingly, the Service's appeal will be dismissed.

**ORDER:** The appeal of the Immigration and Naturalization Service is dismissed.

*DISSENTING OPINION*: Lori L. Scialabba, Vice Chairman; in which Michael J. Heilman, Lauri Steven Filppu, Patricia A. Cole, Lauren R. Mathon, and Philemina McNeill Jones, Board Members, joined

I respectfully dissent.

## *I. ISSUE*

The issue presented in this case is whether the respondent's California conviction for possession of a firearm by a felon is a conviction for an aggravated felony as defined in section 101(a)(43) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43) (1994 & Supp. IV 1998). The majority finds that the respondent's crime is not an aggravated felony. I would find that it is.

The majority errs in its efforts to interpret section 101(a)(43) of the Act, by prematurely shifting its focus away from the language of the Act as it is used in the statute itself and in the section where the language appears. When viewed correctly, section 101(a)(43) requires us to classify an offense under the state statute at issue here, which criminalizes the possession of a firearm by a felon, as an aggravated felony. The crime defined in the state statute need not have a federal jurisdictional element in order to be so classified. By taking the contrary view, the majority undermines the congressional purpose behind much of the aggravated felony provision.

## II. ANALYSIS

### A.

The majority opinion loses its bearings, in part, by prematurely resorting to points of reference outside the Act in an effort to interpret the language inside the Act. In particular, when the meaning of the phrase "described in" does not emerge clearly from an evaluation of section 101(a)(43)(E), the majority, in response to the Service's argument, expends a good deal of effort examining the use of these terms in various parts of federal law outside the aggravated felony provision and outside the Act. This leads the majority's analysis astray.

When we are confronted with apparent ambiguities in the language of

a statute, our first and most critical inquiry must be, as the majority acknowledges, the plain meaning of the statutory language at issue. But in making this inquiry, it is critical that we first examine the language in its proper place within the context and design of the statute as a whole. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *Matter of Alvarado-Alvino*, Interim Decision 3391 (BIA 1999). Here, the majority's inductive inquiry into the uses of the phrase "described in" neglects key features of the context in which the phrase occurs in the aggravated felony provision itself and thereby misconstrues the meaning of that provision.

For example, in examining the language of section 101(a)(43)(E), the majority's opinion focuses on a dictionary definition of the word "described" as well as on the use of this word elsewhere in federal law. In so doing, the majority largely neglects the fact that the phrase "described in" has a dual usage in the aggravated felony provision itself. Another important occurrence of these words lies outside of subsection (E), in the penultimate sentence of section 101(a)(43). This portion of the statute, which governs all the subsections of section 101(a)(43) of the Act, states the following:

> The term [aggravated felony] applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years.

This language unfolds the meaning of the aggravated felony provision in several ways that are left unexamined by the majority. First, the quoted sentence refers the reader to *all* of the crimes "described in" the aggravated felony provision. The language draws no distinctions among the various subsections of section 101(a)(43), such that we could conclude that some subsections describe aggravated felonies regardless of jurisdiction whereas others do not.[1] Thus, we know from the language of the aggravated felony provision itself that whether the offense in question is a common-law crime such as murder, described in section 101(a)(43)(A); a criminal business activity of the type described in subsection (K)(i); or a crime described by reference to federal statute, as in the subsection at issue here, namely subsection (E), the Act as a whole treats the crime as an aggravated felony regardless of any purely jurisdictional element that may be "described in" a given subsection. According to the design of the

---

[1]The one exception is in section 101(a)(43)(P)(i) of the Act, where more specific language requiring a "violation of" 18 U.S.C. § 1543 or § 1546(a) overrides the general direction of the penultimate sentence of section 101(a)(43) as a whole. Here, too, the majority goes astray, mistakenly invoking this sole exception in order to suggest the absence of a general rule.

statute, all of these categories are aggravated felonies "whether in violation of Federal or State law, [or] the law of a foreign country." Section 101(a)(43) of the Act.

Thus, even before we arrive at the question on which the majority focuses so closely, namely, precisely what crime is "described in" subsection (E) of the Act, we already know that the broader language appearing at the end of section 101(a)(43) applies to it. If we are to give it meaning, that language renders irrelevant any jurisdictional elements appearing in the crimes listed in section 101(a)(43).

Furthermore, once Congress has already made the broad statement that violations of federal, state, and foreign law are all included in the definition of an aggravated felony, it need not restate in each subsection that such crimes are to be regarded as aggravated felonies even if they lack a federal jurisdictional element.

In short, by focusing on the Service's argument about the definition of "described in," the majority misses the key point: the governing language in the penultimate sentence of section 101(a)(43) tells us how to interpret the language of subsection (E). If this governing language means anything, it is that the respondent's crime in violation of state law is an aggravated felony regardless of who had jurisdiction over it.

### B.

The majority's opinion also seems inattentive to important consequences of its analysis for interpreting other subsections of the aggravated felony provision. These consequences run contrary to the design of the aggravated felony provision and its apparent function within the design of the Act as a whole.

For example, the penultimate sentence of section 101(a)(43) specifies three types of violations of law that Congress intended to classify as aggravated felonies: violations of federal law, state law, and the law of a foreign country. All three are important to the aggravated felony definition. Perhaps most revealing about the statutory design is the Act's inclusion of violations of foreign law as aggravated felonies. The majority's analysis is especially problematic in this regard.

The majority reasons that Congress must not have intended the key language at the end of section 101(a)(43) to apply to all the crimes in all the subsections, because at least two of them—subsections 101(a)(43)(L) (specifying national security offenses) and (N) (specifying alien smuggling offenses)—show that there are circumstances where no state law counterpart to a federal statute mentioned in section 101(a)(43) exists. However, this reasoning is erroneous. The fact that there is no state law counterpart to a federal statute does not mean there is no *foreign* counterpart.

1427

In addition, most foreign statutes, arising as they generally do under circumstances not akin to our federal system, are extremely unlikely to contain jurisdictional elements similar to those appearing in our federal statutes. Thus, although the statutory directive in the penultimate sentence of section 101(a)(43) requires us to regard certain specified crimes as aggravated felonies, including certain violations of foreign law, the majority's analysis would frequently prevent us from doing so.

Under the majority's view, for example, a number of grave offenses clearly "described in" the subsections of section 101(a)(43) of the Act will be found to have no foreign counterpart and will not be classified as aggravated felonies despite Congress' apparent intent to so classify them. We may be forced by the majority's analysis to conclude, for instance, that under section 101(a)(43)(M)(ii), defrauding one's government of millions of dollars through willful failure to pay legitimate taxes is not an aggravated felony because the United States Internal Revenue Code, which is referenced in that subsection, specifies that the offense must "evade or defeat . . . any tax imposed" by the federal Internal Revenue Code itself—a purely jurisdictional requirement. 26 U.S.C. § 7206(4) (1994) (limiting criminal liability to evasion of taxes "imposed by this title"). We would also likely be constrained to find that a racketeering conviction for processing millions of dollars worth of stolen property abroad is not an aggravated felony; and that smuggling aliens through Canada, or issuing ransom demands for hostages in Mexico, or stockpiling explosive materials in France, or even being convicted in a foreign jurisdiction of possession of a firearm by a felon, are not aggravated felonies, because unlike the federal statutes referenced in the Act, these foreign crimes are unlikely to have a federal jurisdictional element. *See* sections 101(a)(43)(C), (D), (E), (H), (N) of the Act.

The same may be said, of course, of various state laws in addition to the one at issue in the instant case. Under the majority's view, defrauding Nebraska of more than $10,000 in violation of state tax laws would presumably not be an aggravated felony, simply because such crime does not violate the federal Internal Revenue Code. Similarly, violating child pornography laws in New Mexico may not be an aggravated felony because the federal crime defined as an aggravated felony in the Act includes a federal jurisdictional element.

These consequences of the majority's opinion contravene the explicit statutory directive Congress has provided in the penultimate sentence of section 101(a)(43): to identify the specified crimes as aggravated felonies whether in violation of federal or state law, *or the law of a foreign country*. I consider it unreasonable to assume, especially in the face of language to the contrary, that Congress intended to exclude certain specified crimes from the definition of an aggravated felony simply because they lack a jurisdictional element that would be meaningless to the enacting foreign or state jurisdiction.

## C.

Other features of the majority's decision are also problematic. The majority's reasoning, for example, leads beyond the conclusion the majority reaches. The majority opinion states that "it [is not] necessary to address the . . . question whether the phrase 'described in' in section 101(a)(43) of the Act requires that a conviction be pursuant to one of the specified federal statutes in order to qualify as an aggravated felony." *Matter of Vasquez-Muniz*, 22 I&N Dec. 1415, at 1424 (BIA 2000). As a practical matter, however, the majority's opinion results in just such a determination.

No state statute prohibiting felony possession of firearms is likely to explicitly contain an element of "interstate commerce" or "affecting commerce." Not surprisingly, my research has revealed none. Nor would foreign statutes be likely to contain such an element, as already noted. Thus, despite the majority's demurrer in this regard, its analysis requires us to, in effect, read "described in" within section 101(a)(43)(E) of the Act as having the same precise meaning as "in violation of," a phrase that Congress knew to use, and did use, in section 101(a)(43)(P)(i). Certainly Congress could have used these same terms to describe the crimes in section 101(a)(43)(E) had it intended to express the same meaning. Apparently, however, it did not.

## D.

All of the foregoing points to a broader issue that the majority has not attempted to fully address, namely, how our interpretation of section 101(a)(43) fits within the overall design of the Act.

In its place within the Act, the aggravated felony provision in section 101(a)(43) serves to define categories of criminal conduct that Congress finds egregious and to which it attaches negative immigration consequences. The Act accomplishes this by rendering aggravated felons both removable and ineligible for certain immigration benefits and forms of relief. The aggravated felonies Congress has specified in section 101(a)(43) of the Act for this kind of treatment are offenses that are malum in se, or evidence some level of danger to the community, or violate civic virtue and render the alien, in the eyes of Congress, undesirable or unworthy to remain in the United States.

Although the specific provisions in question here are not artfully drafted, we are called upon to interpret them in a way that makes sense of the words Congress used, in the context of the design of the statute as a whole. *K Mart Corp. v. Cartier, Inc.*, *supra.* Applying this principle in light of all of the above observations taken together, the language and design of the Act evince a clear purpose. By virtue of the statutory directive in the penultimate sentence, the aggravated felony provision reflects the intent of

Congress to reach certain types of crimes regardless of which jurisdiction prosecuted the offense. Thus, in this case, classifying as aggravated felonies both state and federal crimes for possession of a firearm by a felon, with all the attendant immigration consequences, comports with the design of the statute as a whole.

By contrast, I see no particular design emerging from the language of the statute as construed by the majority. Nor has the majority sought to fit its interpretation within any apparent congressional design. For example, the majority's analysis does not explain why Congress would have taken the position that a felon convicted of possession of a firearm in violation of state law is not just as undesirable as a felon convicted of the same crime in violation of federal law. The design of section 101(a)(43) appears to indicate otherwise. By including as aggravated felonies all specified violations of law, whether they were federal, state, or foreign, Congress showed its concern with the gravity of an alien's conduct, not with the question of who had jurisdiction over the crime. The effect of the majority's analysis would be to frequently undercut this statutory scheme by excluding from the definition of an aggravated felony the very substantive criminal activities that Congress intended to combat.

Moreover, the majority's analysis makes Congress' language puzzling rather than enlightening. If, as the majority suggests, the statutory scheme reveals Congress' intent to resolve within each subsection of section 101(a)(43) the question of the significance of purely jurisdictional elements in the specified crimes, it is unclear why the broad language in the penultimate sentence of that section is necessary. Had Congress wished to differentiate this issue subsection-by-subsection, it could easily have done so. It did not.

In short, the only way we can read the respondent's crime as *not* being an aggravated felony is by insisting, as does the majority, upon the importance of the very federal jurisdictional element in the criminal statute that the language of the Act directs us to ignore.

## E.

In addition to the foregoing, this Board's treatment of the distinction between federal and state crimes has differed significantly from the approach articulated by the majority. The Board grappled with this issue in a line of cases interpreting section 101(a)(43)(B) of the Act, beginning with *Matter of Barrett*, 20 I&N Dec. 171 (BIA 1990). *Barrett* held that drug trafficking crimes were aggravated felonies under section 101(a)(43)(B) of the Act, whether they were in violation of federal or state law. As noted by the majority, Congress subsequently amended the Act to codify the Board's ruling in *Barrett*. The analogy to the instant case is stronger than the majority is willing to concede.

The majority does not find *Matter of Barrett*, *supra*, especially significant because it concludes that section 101(a)(43)(B) (involving drug crimes) is "not formulated in the same manner as that in section 101(a)(43)(E)" (involving firearms offenses). *Matter of Vasquez-Muniz*, *supra*, at 1423. However, there are important similarities, as both sections are governed by the broad language appearing in the penultimate sentence of section 101(a)(43) and both concern whether the term "aggravated felony" encompasses a state crime through reference to a federally defined crime. Thus, many of the factors we took into account in *Matter of Barrett*, *supra*, to resolve the latter question with respect to section 101(a)(43)(B) are equally instructive here. These factors included the following:

> (i) the broad language of the new provision ("any drug trafficking crime");

> (ii) the fact that former section 241(a)(4) of the Act, which was amended to include the aggravated felony ground of deportation, had always been interpreted to include state offenses;

> (iii) the fact that "the Act generally does not attach different treatment to state and federal drug offenses with respect to excludability, deportability, or the negative effect of a drug conviction on various forms of relief from exclusion or deportation"; and

> (iv) the fact that a contrary view "would discriminate between state and federal drug crimes . . . in a way previously unknown in the Act."

*Matter of Barrett*, *supra*, at 175-76. We also found that it was "unreasonable to assume that Congress, in choosing the definition of 'drug trafficking crime' at 18 U.S.C. § 924(c)(2), sought to differentiate between aliens convicted of similar drug-related offenses on the basis of whether the conviction was accomplished under state or federal law."[2] *Id.* at 175.

In the instant case, we are again faced with broad language suggesting that we should make no distinction between federal and state crimes in determining whether a given offense is an aggravated felony. Therefore, I

---

[2]We also stated as follows:

Inclusion of state crimes in the definition of "drug trafficking crime" is also consistent with the Immigration and Nationality Act read as a whole. Congress chose to append the new ground of deportability relating to aggravated felons to section 241(a)(4) of the Act which has always been read to include state crimes. Absent a clear intent to depart from the prior undisputed inclusion of state crimes under section 241(a)(4), we find no reason to believe that Congress, in adding the aggravated felony provision to this section, meant to exclude state drug-related crimes when it chose the definition of "drug trafficking crime" at 18 U.S.C. § 924(c)(2).

*Matter of Barrett*, *supra*, at 175-76.

would find, as we did in *Barrett*, that it is "unreasonable to assume" that Congress sought to make a distinction between federal and state crimes purely on jurisdictional grounds, without specifically so stating. I would find that when Congress plainly states that certain crimes, described in specified legislation, are to be treated as aggravated felonies, whether in violation of federal or state or foreign law, and describes a statute setting forth the substantive elements of a crime, such as possession of a firearm by a felon, Congress intends for us to disregard any purely jurisdictional elements of the crime when determining whether it is an aggravated felony. Such is the case here.

### III. CONCLUSION

My colleagues in the majority seem to find that the meaning of the aggravated felony provision of the Act, as applied to this matter, can best be discerned by interpreting section 101(a)(43)(E) of the Act through a dictionary definition of the word "describe" and an inductive survey of the use of this term outside the Act. I find this inductive inquiry neither necessary nor conclusive, because the phrase "described in" at section 101(a)(43)(E) is governed by broader language that appears elsewhere in the same section of law. This governing language indicates that any crime described in any subsection of section 101(a)(43) is an aggravated felony, whether it violates federal, state, or foreign law.

This governing language, the context in which it occurs, the design of the Act, and the history of our treatment of the federal/state distinction in the aggravated felony context all indicate that a violation of state or foreign law that has the same elements as a referenced federal law—except for the jurisdictional element that makes such laws federal—should be regarded as an aggravated felony.

I would therefore find that the respondent, a felon convicted of possession of a firearm, need not violate 18 U.S.C. § 922(g)(1) in order to run afoul of the aggravated felony provision. Although the state offense of which he was convicted does not contain the federal jurisdictional element of § 922(g)(1), it nonetheless satisfies the definition of an aggravated felony under section 101(a)(43)(E) of the Act. Consequently, I would find the respondent ineligible for relief from removal.