In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2728

RAFAEL GONZALES-GOMEZ,

*Petitioner-Appellee,*

*v.*

DEBORAH ACHIM,

*Respondent-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 0189—**Marvin E. Aspen**, *Judge.*

ARGUED JANUARY 4, 2006—DECIDED MARCH 22, 2006

Before POSNER, EVANS, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* Gonzales-Gomez, a lawful perma-
nent resident of the United States, was convicted in an
Illinois state court of possession of a small quantity of
cocaine. Conviction of a drug offense is (with an immaterial
exception) a ground for removal (deportation). 8 U.S.C.
§ 1227(a)(2)(B)(i). Gonzales-Gomez's crime was a felony
under Illinois law. Had he been charged under the fed-
eral Controlled Substances Act, however, his crime would
have been only a misdemeanor because it involved only
simple possession. 21 U.S.C. § 844(a). An immigration
judge, seconded by the Board of Immigration Appeals,

ruled that Gonzales-Gomez's state felony was a "felony punishable under the Controlled Substances Act" and therefore an "aggravated felony" under the Immigration and Nationality Act. This meant that he could not seek cancellation of removal, a form of discretionary relief that permanent residents who have not been convicted of an "aggravated felony" can seek. 8 U.S.C. § 1229b(a)(3). So he was ordered removed. He filed a petition for review with this court, which directed him to refile it as a petition for habeas corpus in the district court. The court granted him relief, 372 F. Supp. 2d 1062 (N.D. Ill. 2005), and the government has appealed. As a result of intervening legislation, the parties correctly agree that we should treat the appeal as the government's response to Gonzales-Gomez's original petition for review, *Bonhometre v. Gonzales*, 414 F.3d 442, 445-46 (3d Cir. 2005), and so we shall, but without bothering to change the caption.

The circuits that have had occasion to address the question whether a state-law felony that would be punishable only as a misdemeanor by federal law is nevertheless an "aggravated felony" have split. (Until this case we had not had occasion to address the question.) Compare *United States v. Hernandez-Avalos*, 251 F.3d 505, 507-08 (5th Cir. 2001), and cases cited there, answering "yes," with *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909-18 (9th Cir. 2004), and cases cited there, answering "no." The "yes" answer, here urged by the government, is a strained reading of the statutory language, is inconsistent with the government's general position regarding the definition of "aggravated felony," is inconsistent with the interest in uniform standards for removal, and is inconsistent with the legislative history.

It will help to set forth the chain of statutory provisions that leads the government to the interpretation it

defends. As we said, conviction of an "aggravated felony" bars a permanent resident from seeking cancellation of removal. The immigration statute defines "aggravated felony" as either "murder, rape, or sexual abuse of a minor," or "illicit trafficking in a controlled substance . . ., including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)." 8 U.S.C. § 1101(a)(43). Section 924(c)(12) defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act." The implication of this chain of incorporations is that if you commit a felony violation of the Controlled Substances Act you are guilty not just of an ordinary felony, but of an "aggravated felony." The government, however, reads "any felony punishable under the Controlled Substances Act" in section 924(c) as if the words were "any felony punishable under the Controlled Substances Act as either a felony or a misdemeanor."

In defense of this interpretation (to which we owe no deference, since Congress has not delegated the interpretation of criminal statutes to the executive branch, *Flores v. Ashcroft*, 350 F.3d 666, 671 (7th Cir. 2003)), the government points to the definitions section of the Controlled Substances Act. There we read that "the term 'felony' means any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13). The fact that "felony" is defined to include a state felony doesn't imply, however, that a state felony is *punishable* under the Controlled Substances Act. State crimes, as distinct from the acts constituting the crimes, are not usually punished by federal law. Federal law punishes bank robberies, as does state law; but the federal bank robbery statute does not say that anyone who is convicted of bank robbery in state court is guilty of a federal offense. 18 U.S.C. § 2113. The Controlled Substances Act does not purport to punish state drug

felonies; rather, it indicates that a state felony conviction can be used to enhance the federal sentence of a defendant convicted of violating the Act. For example, 21 U.S.C. § 841(b)(1) enhances a defendant's sentence for violating the Controlled Substances Act if he has a prior conviction for a felony drug offense; the definition in section 802(13) makes clear that it can be a conviction for a state felony. There is no indication that in 18 U.S.C. § 924(c) Congress was legislating with reference to immigration.

The government points out that the words "any felony punishable under the Controlled Substances Act" in section 924(c) were substituted by a 1988 amendment for "any felony violation of Federal law involving distribution, manufacture, or importation of any controlled substance." The amendment was intended to clarify that certain conduct, such as carrying a firearm in a drug offense, that violated the Controlled Substances Act, would be a basis for an enhanced sentence pursuant to section 924(c), as had been unclear under the earlier language. 134 Cong. Rec. S17360, S17363 (1988) (remarks of Sen. Biden, who was the chairman of the Senate Judiciary Committee, where the amendment originated, and who was the principal draftsman of the amendment); *Cazarez-Gutierrez v. Ashcroft*, *supra*, 382 F.3d at 914-17; *Gerbier v. Holmes*, 280 F.3d 297, 308-09 (3d Cir. 2002). There is no hint that commission of a state drug offense is now to be deemed the commission of a federal drug offense. A state conviction can enhance punishment for a federal drug offense; the conviction does not establish guilt of the federal drug offense.

The government argues that it is too difficult for the immigration authorities or the courts to determine whether conduct that resulted in a state felony conviction would also have been a felony under the Controlled Sub-

stances Act. Of course in this case it is perfectly obvious, and conceded, that the alien's conduct would not have been a felony under the Act. In other cases the determination may be more difficult. But in principle the line runs between someone who possesses illegal drugs for his own consumption and someone who possesses it with intent to sell, and in practice the line usually is drawn on the basis of quantity. If the defendant possesses more than would be reasonable for personal consumption, he is assumed to have intended to sell it. E.g., *United States v. Puckett*, 405 F.3d 589, 600-01 (7th Cir. 2005); *United States v. Billops*, 43 F.3d 281, 285 n. 5 (7th Cir. 1994); *United States v. Schneiderhan*, 404 F.3d 73, 81 (1st Cir. 2005). So as long as the quantity is known, there is rarely any mystery about whether the defendant committed a felony violation of the Act, as well as committing a felony under state law.

Allowing cancellation of removal to depend on how severely a particular state punishes drug crimes would have the paradoxical result of allowing states, in effect, to impose banishment from the United States as a sanction for a violation of state law. For then if a state made the possession of one marijuana cigarette a felony, which it is perfectly entitled to do, it would be in effect annexing banishment from the United States to the criminal sanction. States do not have the power to banish people from the United States. "[T]he regulation of aliens is so intimately blended and intertwined with responsibilities of the national government that where it acts, and the state also acts on the same subject, 'the act of Congress, or the treaty, is supreme; and the law of the State, though enacted in the exercise of powers not controverted, must yield to it.'" *Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941). Congress has acted, specifying in great detail the grounds on which aliens are permitted or forbidden to remain in the United States.

Congress could permit those grounds to vary from state to state, but it would be unlikely to do so (and it has not done so), because this would empower the states to determine matters that are at the heart of the federal immigration laws. "[O]ver no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens," *Fiallo v. Bell*, 430 U.S. 787, 792 (1977); see *Gerbier v. Holmes*, *supra*, 280 F.3d at 312.

The only consistency that we can see in the government's treatment of the meaning of "aggravated felony" is that the alien always loses. Recall that one of the offenses that constitute aggravated felonies for purposes of the immigration statute is "sexual abuse of a minor." The government's position, which we and other courts have endorsed, is that whether a particular offense constitutes "sexual abuse of a minor" for purposes of classification as an aggravated felony is a matter of federal law rather than state law. *Gattem v. Gonzales*, 412 F.3d 758, 765 (7th Cir. 2005); *Lara-Ruiz v. INS*, 241 F.3d 934, 940-42 (7th Cir. 2001); *Parrilla v. Gonzales*, 414 F.3d 1038, 1040-42 (9th Cir. 2005); *Bahar v. Ashcroft*, 264 F.3d 1309, 1311-12 (11th Cir. 2001); *Mugalli v. Ashcroft*, 258 F.3d 52, 56-60 (2d Cir. 2001); *Emile v. INS*, 244 F.3d 183, 185-86 (1st Cir. 2001). Even if the state has decided that a particular form of such abuse is a misdemeanor, the immigration authorities can redefine it as a felony, indeed as an aggravated felony. Such redefinition serves the interest in national uniformity of the standards for removability by forbidding states to decide, by their classification of a crime as a misdemeanor or a felony, who shall be removable. This case is the mirror image. If states cannot be permitted by exercising unusual leniency to spare criminals from banishment, neither should they be permitted by unusual severity to condemn criminals to banishment.

We are mindful of cases that hold that when used to enhance a sentence the Controlled Substances Act does not require a finding that the state felony could have been punished as a (federal) felony under the Act. *United States v. Ibarra-Galindo*, 206 F.3d 1337, 1339-40 (9th Cir. 2000); *United States v. Restrepo-Aguilar*, 74 F.3d 361, 364-65 (1st Cir. 1996). As noted in *United States v. Palacios-Suarez*, 418 F.3d 692, 698-99 (6th Cir. 2005), these decisions are based on a since-superseded sentencing guideline, and their current validity is in doubt. But even if they remain valid, no issue of disuniformity in the application of federal immigration law is presented by a sentence enhancement; and we saw earlier that there is no indication that the 1988 amendment that generates the issue in this case was concerned with regulating immigration.

The petition for review is granted, and the case returned to the Board of Immigration Appeals for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*