In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 06-1931 & 06-2938

PABLO NEGRETE-RODRIGUEZ,

*Petitioner*,

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent.*

———————

Petitions for Review of Decisions
of the Board of Immigration Appeals.
No. A14-475-771

———————

ARGUED OCTOBER 30, 2007—DECIDED MARCH 3, 2008

———————

Before MANION, ROVNER, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* Pablo Negrete-Rodriguez ("Negrete") is a Mexican citizen. He was admitted to the United States as a lawful permanent resident in 1965. Later, Negrete was convicted of several crimes in Illinois, including possession of a firearm by a felon. Removal proceedings were instituted against him in 2001. After a hearing, the Immigration Judge ("IJ") determined, among other things, that Negrete's Illinois firearms conviction was an aggravated felony, thus barring Negrete from eligibility for cancellation of removal, and ordered Negrete removed to Mexico. The Board of Immigration Appeals ("Board") affirmed the IJ's decision and denied Negrete's

motion to reconsider. Because we conclude that the Board properly categorized Negrete's Illinois felon-in-possession conviction as an aggravated felony, we deny Negrete's petitions for review.

## I.

Negrete entered the United States as a lawful permanent resident on September 28, 1965, at the age of four. While in the United States, Negrete compiled an extensive record of criminal arrests and convictions beginning in the early 1980's and ending in the middle of the next decade. All of Negrete's arrests and convictions took place in Illinois. In 1981, Negrete was arrested four times, including once for disorderly conduct, another time for unlawful use of a weapon, and yet another time for theft. In 1982, Negrete was arrested and convicted of robbery; in 1984, he was arrested for battery. Negrete was arrested and convicted again in April 1986, this time for possession of a controlled substance. He was also arrested in August 1986 for driving under the influence, leaving the scene of an accident and failing to report it, failing to have a valid driver's license, and driving in the wrong lane. Negrete added two more arrests to his record for driving under the influence, once in 1993 and again in 1995, as well as an arrest for drinking in public in 1994. In 1990, Negrete was arrested for aggravated assault. Most pertinent to this opinion, however, is Negrete's 1990 conviction for unlawful possession of a weapon by a felon in violation of 720 ILCS 5/24-1.1(a).[1]

---

[1] At the time of Negrete's conviction, that section was designated as paragraph 24-1.1(a) of chapter 38 of the Illinois Revised Code.

In 2001, Negrete left the United States to visit Mexico. Upon his return, the Department of Homeland Security ("DHS")[2] initiated removal proceedings against Negrete, charging him in the Notice to Appear ("Notice") as an arriving alien who was subject to removal based on §§ 212(a)(2)(A)(i)(I)-(II) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. §§ 1182(a)(2)(A)(i)(I)-(II), for crimes involving moral turpitude and a controlled substance. The Notice listed Negrete's 1982 conviction for robbery, his 1986 conviction for possession of a controlled substance, and his 1990 conviction for unlawful possession of a weapon by a felon. At Negrete's first appearance in immigration court on September 5, 2002, DHS noted that the Notice would have to be amended, as it incorrectly listed Negrete as an arriving alien instead of a lawful permanent resident, and also requested a continuance. The IJ granted DHS's request without objection from Negrete and continued Negrete's hearing until January 9, 2003.

The hearing was continued several more times after the January 9, 2003, date. In the interim, the government supplemented the Notice to reflect Negrete's status as a lawful permanent resident rather than an arriving alien. In addition, the government revised its charges, alleging, among other things, that Negrete was removable under § 237(a)(2)(A)(iii) of the INA, codified at 8 U.S.C.

---

[2] At the time of Negrete's attempted reentry, the Immigration and Naturalization Service was in charge of prosecuting Negrete's removal proceedings. On March 1, 2003, the INS ceased to exist as an independent agency and DHS assumed its functions. For the sake of clarity, we will refer only to DHS in this opinion.

§ 1227(a)(2)(A)(iii), for having been convicted of two aggravated felonies, the first an offense involving a controlled substance as defined in § 101(a)(43)(B) of the INA, codified at 8 U.S.C. § 1101(a)(43)(B); and the second a firearms-related offense as defined in § 101(a)(43)(E)(ii) of the INA, codified at 8 U.S.C. § 1101(a)(43)(E)(ii). While the government was amending its charges, Negrete filed an application for a waiver under the former § 212(c) of the INA[3] and applied for cancellation of removal as well.

On February 7, 2005, the IJ held a hearing and found, among other things, that DHS had proved the two aggravated-felony grounds for removal by clear and convincing evidence. Relying on the Board's finding in *In re Yanez-Garcia*, 23 I&N Dec. 390 (BIA 2002), the IJ rejected Negrete's argument that his 1987 possession of a controlled substance should not have been classified as an aggravated felony. The IJ also rejected Negrete's argument that his firearms conviction did not amount to an aggravated felony. In rejecting the latter argument, the IJ dis-

---

[3] Prior to 1996, § 212(c) of the INA, codified at 8 U.S.C. § 1182(c), allowed the Attorney General to waive deportation for aliens under certain circumstances. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act that, effective in April 1997, repealed § 212(c) and replaced it with a new section giving the Attorney General authority to cancel removal only for a very narrow class of aliens. 8 U.S.C. § 1229b. Under the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 326 (2001), however, § 212(c) waivers remain available to aliens who pleaded guilty to an aggravated felony prior to the effective date of the repeal and who would have been eligible for relief under the law then in effect. *See generally Valere v. Gonzales*, 473 F.3d 757, 759-60 (7th Cir. 2007) (discussing the current status of § 212(c) waivers in great detail).

cussed *In re Vasquez-Muniz*, 23 I&N Dec. 207 (BIA 2002) ("*Vasquez-Muniz II*"), wherein the Board reversed its two-year-old ruling in *In re Vasquez-Muniz*, 22 I&N Dec. 1415 (BIA 2000) ("*Vasquez-Muniz I*"). In *Vasquez-Muniz I*, the Board had held that a state law conviction for possession of a firearm by a felon did not count as an aggravated felony for immigration purposes if the state offense did not require an effect on interstate or foreign commerce. Based on *In re Yanez-Garcia* and *Vasquez-Muniz II*, the IJ further determined that Negrete had no valid form of relief from removal available to him, and therefore ordered that Negrete be removed to Mexico.

Negrete appealed to the Board. In a decision dated March 9, 2006, the Board affirmed the IJ's ruling and dismissed Negrete's appeal. Negrete filed a motion to reconsider, arguing that his removability was affected by this court's decision in *Gonzales-Gomez v. Achim*, 441 F.3d 532 (7th Cir. 2006), wherein we held that a drug offense that was classified as a felony under state law, but only a misdemeanor under the Controlled Substances Act, did not constitute an aggravated felony under the INA. The Board agreed that, under *Gonzales-Gomez*, Negrete's 1987 drug conviction could not count as an aggravated felony. However, the Board, citing its decision in *Vasquez-Muniz II*, found that Negrete was still removable under the INA as an alien convicted of an aggravated felony because of his conviction for unlawful possession of a firearm by a felon. Negrete filed both a petition to review the Board's decision affirming the IJ and a petition to review the Board's denial of his motion to reconsider.

## II.

On appeal, Negrete challenges the Board's interpretation of the INA's aggravated felony provision in *Vasquez-Muniz II*, as well as the Board's application of its decision in *Vasquez-Muniz II* to this case. Specifically, he argues that the Board should not have classified his 1990 Illinois conviction for unlawful possession of a weapon by a felon as an aggravated felony under the INA. That classification is important because an aggravated felony prevents Negrete from seeking cancellation of removal. *See* 8 U.S.C. § 1229b(a) ("The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien . . . has not been convicted of any aggravated felony."). Section 101(a)(43) of the INA defines aggravated felonies. 8 U.S.C. § 1101(a)(43). The pertinent subsection of that provision is § 101(a)(43)(E)(ii) of the INA, which provides that "[t]he term 'aggravated felony' means . . . an offense described in . . . section 922(g)(1) . . . of Title 18 (relating to firearms offenses)." 8 U.S.C. § 1101(a)(43)(E)(ii). In addition, the penultimate sentence of § 101(a)(43) states that "[t]he term [aggravated felony] applies to an offense described in this paragraph whether in violation of Federal or State law." 8 U.S.C. § 1101(a)(43).

Negrete argues that his 1990 conviction for unlawful possession of a firearm by a felon is not an offense "described in" 18 U.S.C. § 922(g)(1) because the elements of those offenses are not the same. "There are three elements to a § 922(g)(1) violation: the prior felony, the possession of the gun and the gun's travel in interstate commerce (that is, across state lines) prior to the defendant's possession of it." *United States v. Ortiz*, 474 F.3d 976, 982 (7th Cir. 2007). In contrast, the elements for the offense of unlawful

possession of a weapon by a felon in Illinois are: "(1) the defendant knowingly possessed a firearm, and (2) the defendant had previously been convicted of a felony." *People v. Vasquez*, 856 N.E.2d 523, 531-532 (Ill. App. Ct. 2006) (citing 720 ILCS 5/24-1.1(a)). Because a conviction for unlawful possession of a weapon by a felon in Illinois does not require the element of "in or affecting commerce," as § 922(g)(1) does, Negrete argues that his 1990 Illinois conviction for unlawful possession of a weapon is not an offense "described in" section 922(g)(1), and consequently is not an "aggravated felony" under § 101(a)(43)(E)(ii) of the INA.

Before we examine that contention, we must determine the standard of review. "Ordinarily, we review de novo the classification of an offense as an aggravated felony, giving deference to the [Board's] reasonable interpretation of the INA." *Sharashidze v. Gonzales*, 480 F.3d 566, 568 n.4 (7th Cir. 2007). However, Negrete argues that we owe the Board no deference here because this case, like *Gonzales-Gomez v. Achim*, 441 F.3d 532 (7th Cir. 2006), turns on the interpretation of federal criminal law. We disagree. In *Gonzales-Gomez*, the interpretation of the phrase "any felony punishable under the Controlled Substances Act" in 18 U.S.C. § 924(c)(2) was at issue. Here we need not interpret any federal criminal statute. Instead, all that is necessary from the federal criminal code in deciding this case is a simple recitation of § 922(g)(1)'s elements, which is given above. The question of interpretation here revolves around whether "in interstate commerce" or a similar commercial reference is a necessary element for a state statute to qualify as an aggravated felony.

Negrete, of course, argues that the Board's interpretation of § 101(a)(43)(E)(ii) of the INA in *Vasquez-Muniz II* is

unreasonable. The Seventh Circuit has not yet considered whether the definition of an aggravated felony under § 101(a)(43)(E)(ii) includes a state law conviction for firearm possession by a felon if that offense does not include the element of affecting commerce. The Ninth Circuit, however, has concluded, in the context of inter- preting the United States Sentencing Guidelines, that it does include such a conviction. *United States v. Castillo- Rivera*, 244 F.3d 1020 (9th Cir. 2001). The Guidelines import the definition of "aggravated felony" from the INA to use in determining whether a defendant merits a sentencing enhancement for being deported after a con- viction for an aggravated felony. U.S.S.G. § 2L1.2 applica- tion note 3 (2007). In *Castillo*, the defendant was assessed the sentencing enhancement for being deported after a conviction for an aggravated felony because of his state court conviction for being a felon in possession of a handgun. 244 F.3d at 1021. On appeal, he argued that the enhancement was improper because his state felon-in- possession conviction, unlike § 922(g)(1), did not require an interstate or foreign commerce nexus and therefore was not an "aggravated felony." *Id*. at 1022.

The Ninth Circuit disagreed. It held that the commerce element of § 922(g)(1) was "merely a jurisdictional basis" and therefore not essential to whether the state felon-in- possession offense was an aggravated felony. *Id*. at 1023 (quoting *United States v. Sandoval-Barajas*, 206 F.3d 853, 856 (9th Cir. 2000)). In reaching that conclusion, the Ninth Circuit first examined the text of § 101(a)(43). It noted that Congress clearly intended state crimes to serve as predicate offenses for aggravated felonies, since § 101(a)(43) explicitly states in its penultimate sentence that an aggravated felony is "an offense described in

this paragraph whether in violation of Federal or State law." *Id*. (quoting 8 U.S.C. § 1101(a)(43)). Furthermore, the court in *Castillo* found the fact that Congress used the looser standard "described in" for § 101(a)(43)(E)(ii), rather than the more precise phrase "defined in" used elsewhere in § 101(a)(43), significant because it demonstrated that Congress "wanted more than a negligible number of state offenses to count as aggravated felonies." *Id*. (quoting *Sandoval*, 206 F.3d at 855). According to the Ninth Circuit, interpreting the jurisdictional element of § 922(g) as essential for a state offense to qualify as an aggravated felony would do precisely what Congress did not intend, i.e., reduce the number of state firearms offenses that qualify as aggravated felonies under § 101(a)(43)(E)(ii) to a negligible number, because state firearms convictions would "[r]arely, if ever" specify whether the commerce element was met. *Id*. Finally, the Ninth Circuit cited its own previous characterization of the commerce element of § 922(g) as a non-substantive, merely jurisdictional provision in reaching the conclusion that the defendant's state law conviction for possession of a firearm by a felon qualified as an aggravated felony for sentencing purposes despite the lack of the commerce element. *Id*. at 1024.

We find the Ninth Circuit's reasoning persuasive. The Illinois statute under which Negrete was convicted, 720 ILCS 5/24-1.1(a), is clearly the state law counterpart to § 922(g)(1). Although not "mere surplusage," a jurisdictional element does little more than ensure that the conduct regulated in a federal criminal statute is within the federal government's limited power to proscribe, thereby preventing the federal government from usurping power from the "States [who] possess primary authority for

defining and enforcing the criminal law." *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993). The statutory scheme expressly includes the state equivalent of a § 922(g)(1) offense in the definition of "aggravated felony." The only purpose of the commerce element of § 922(g)(1) is to obtain federal jurisdiction over the crime. Clearly Congress did not intend an element not necessary in state law to be the factor determining whether the state offense can be considered the equivalent of a § 922(g)(1) offense. That would likely eliminate the intended inclusion of most state statutes, since states do not operate under the same jurisdictional constraints as the federal government. Negrete does list several Illinois criminal statutes that he argues incorporate an element of affecting commerce. *See, e.g.*, 720 ILCS 5/24-3.5(c) (unlawful purchase of a firearm); 720 ILCS 5/24-3.4 (unlawful sale of firearms by liquor licensee); 720 ILCS 5/24-3 (unlawful sale of a firearm); 720 ILCS 5/24-1(a)(7) (prohibiting, among other things, the sale of a "machine gun," sawed-off shotgun, or explosive device); 720 ILCS 5/24-3.3 (prohibiting, among other things, the sale of firearms on school premises); 720 ILCS 5/24-2.1(a) (prohibiting, among other things, the sale of firearm projectiles). An examination of those statutes, however, only confirms the previous point. While some offenses committed under those statutes may involve commerce, none of those statutes contains an express element of affecting commerce, which is what Negrete is arguing that § 101(a)(43)(E)(ii) requires for his state felon-in-possession conviction to count as an aggravated felony. Furthermore, Negrete's citation to those statutes misses the mark. The question is not whether a state *could* conceivably create a felon-in-possession offense that contains an element of affecting commerce. Rather, it is whether Congress meant to *limit*

the phrase "offense described in section 922(g)(1)" contained in § 101(a)(43)(E)(ii) only to state offenses that have such an element. Nothing in the text of the statute indicates that is what Congress intended. *See Castillo*, 244 F.3d at 1023.

Negrete argues, however, that the Ninth Circuit misreads the text of § 101(a)(43). He bases his textual argument on the fact that Congress, in the definition of "aggravated felony," listed certain predicate crimes in general terms—such as "rape," "murder," or "sexual abuse" in § 101(a)(43)(A)—but did not do so for firearms offenses, instead referencing a specific federal provision for each firearms offense. According to Negrete, the failure of Congress to do so evinces an intent to require that all the elements of a state firearms offense be identical to all the elements of the federal firearms offense—including any jurisdictional element—referenced in § 1101(a)(43)(E)(ii) in order to count as an "aggravated felony." In essence, Negrete is arguing that "defined in" and "described in" are synonymous. We reject this argument, primarily because it renders the distinction between the terms "described in" and "defined in" meaningless. *See United States v. Michalek*, 54 F.3d 325, 335-36 (7th Cir. 1995). Also, it does not follow that, because Congress has defined *some* crimes in general terms, it had to define *all* crimes in general terms in order for the offense's state law counterpart to be included within the definition of an "aggravated felony." Indeed, many firearms offenses are not susceptible to being easily described in general terms, *see, e.g.*, 18 U.S.C. § 922(g)(4) (offense of possession of a firearm or ammunition by someone who has been adjudicated as a mental defective or who has been committed to a mental institution); while others are dependent on

other provisions in a statutory scheme. *See, e.g.*, 18 U.S.C. § 922(o) (making it unlawful for a person to possess a "machinegun," where that term is defined elsewhere in the National Firearms Act). Congress could therefore rationally have decided to describe those offenses by reference to the statutory provision where they were located rather than conjuring up an awkward general descriptor, or having to recopy several parts of a statutory scheme. Such a choice does not therefore logically foreclose the inclusion of the state law counterparts of those offenses. Because the Board's interpretation of § 101(a)(43)(e)(ii) is rational and comports with the statutory text, we find no error in the Board following its decision in *Vasquez-Muniz II* in this case and determining that Negrete's 1990 Illinois conviction for unlawful possession of a weapon by a felon constituted an aggravated felony.

As an alternative argument, Negrete contends that, even if we accept the Board's interpretation of § 101(a)(43)(E)(ii) in *Vasquez-Muniz II*, the application of that interpretation to his case had an impermissible retroactive effect and therefore violated his due process rights. Negrete asserts that such a change in interpretation must take place through notice-and-comment rulemaking rather than through adjudication. We find Negrete's retroactivity argument unpersuasive. An agency is not precluded from announcing new principles in an adjudicative proceeding rather than through notice-and-comment rulemaking. *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947) ("[T]he choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency."); *see also NLRB v. Bell Aerospace Co. Div. of Textron Inc.*, 416

U.S. 267, 294-95 (1974). "An 'administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests.' " *State of Ill. v. Bowen*, 786 F.2d 288, 292 (7th Cir. 1986) (quoting *Heckler v. Cmty. Health Servs., Inc.*, 467 U.S. 51 (1984)). Nevertheless, Negrete has not shown that he had any "reasonable reliance interests" that were intruded upon by the Board's change of course in *Vasquez-Muniz II*. Negrete could not have reasonably relied on the rule of *Vasquez-Muniz I* when he pleaded guilty to his 1990 felon-in-possession offense because that decision was not even handed down until 2000.[4] By the time Negrete first appeared in immigration court (September 5, 2002), *Vasquez-Muniz I* was already overruled (January 15, 2002). Furthermore, *Vasquez-Muniz I* was a case of first impression in an unsettled area of the law; it was on the books for less than four months before the Ninth Circuit's decision in *Castillo* called it into question. *See NLRB v. Wayne Transp.*, 776 F.2d 745, 751 n.8 (7th Cir. 1985) (noting factors in deciding whether a new administrative rule should apply retroactively include, inter alia, whether the new rule "represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law"; "the extent to which the party against whom the new rule is applied relied on the former rule"; and "the statu-

---

[4] To the extent that Negrete appears to be asserting detrimental reliance on the basis that, when he pleaded guilty, he could not have anticipated that his 1990 conviction would qualify as an "aggravated felony" due to the 1996 statutory amendments to that provision, his argument is foreclosed by *Flores-Leon v. INS*, 272 F.3d 433, 438-39 (7th Cir. 2001), where we found that Congress had clearly manifested an intent to apply the amended definition of "aggravated felony" retroactively.

tory interest in applying a new rule") (citing cases). Thus, the Board's decision two years later to overturn *Vasquez-Muniz I* was hardly the "abrupt departure from well established practice" that Negrete would have us believe. *Id*. Finally, as the preceding discussion has illustrated, the Board's new interpretation rests on solid statutory ground. The Board therefore did not violate Negrete's due process rights by applying it.

Negrete's last two sets of arguments can be quickly dispatched. First, Negrete makes several arguments in support of his eligibility for cancellation of removal. But because we find that the Board did not err in finding that his 1990 firearms conviction was an "aggravated felony," and therefore correctly found that Negrete is statutorily ineligible for cancellation of removal, *see* 8 U.S.C. § 1229b, we need not address those arguments. Second, Negrete argues that the Board erred in not simultaneously granting a § 212(c) waiver and cancellation of removal. As Negrete acknowledges in his brief, however, the courts of appeals that have considered this argument have rejected it. *See Peralta-Taveras v. Attorney Gen.*, 488 F.3d 580, 585 (2d Cir. 2007) (citing cases). The courts in those cases reasoned that, because the statutory bar to eligibility for cancellation of removal is the conviction for an aggravated felony, even if the alien could obtain a § 212(c) waiver, the alien would still remain a person who has been "convicted of an aggravated felony" and therefore ineligible for cancellation of removal under 8 U.S.C. § 1229b. *See, e.g., id*. at 585. We find that logic sound, and therefore reject Negrete's contention that he is eligible for a simultaneous grant of a § 212(c) waiver and cancellation of removal.

## III.

The Board did not err in determining that Negrete's 1990 Illinois conviction for possession of a firearm by a felon constituted an "aggravated felony" and therefore made Negrete statutorily ineligible for cancellation of removal, as well as a simultaneous grant of a § 212(c) waiver and cancellation of removal. The Board's interpretation of § 101(a)(43)(E)(ii) of the INA, which does not require a state felon-in-possession offense to include a jurisdictional element of affecting commerce in order for that offense to be equivalent to an offense "described in" 18 U.S.C. § 922(g)(1), is a reasonable interpretation of that provision. Furthermore, the application of that interpretation to Negrete did not violate Negrete's due process rights because Negrete has not shown any reasonable reliance upon the Board's prior interpretation of § 101(a)(43)(E)(ii). We therefore DENY Negrete's petitions for review.