22 A.3d 43 (2011)
420 N.J. Super. 465
STATE of New Jersey, Plaintiff-Respondent,
v.
Arthur TELFORD, Defendant-Appellant.
No. A-0286-10T2.
Superior Court of New Jersey, Appellate Division.
Submitted May 11, 2011.
Decided June 15, 2011.
*44 Yvonne Smith Segars, Public Defender, attorney for appellant (Alison Perrone, Designated Counsel, on the brief).
Paula T. Dow, Attorney General, attorney for respondent (Frank J. Ducoat, Deputy Attorney General, of counsel and on the brief).
Before Judges CUFF, FISHER and FASCIALE.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we consider whether defendant was deprived of the effective assistance of counsel becauseprior to defendant's entry of a guilty plea to third-degree child endangerment in 2004his attorney only advised that he "might" rather than "would" be deported. Because we agree with the trial judge's determination that the deportation consequences at the time defendant entered his plea were too complex to require more specific advice, we affirm.

I
Defendant was born in Guyana and immigrated to this country with his parents when he was three years old. He is now thirty-four years old. Defendant's parents are naturalized citizens; he is not. Defendant was a lawful permanent resident indeed, this is the only country he has ever knownwhen indicted in 2003 and charged with sex offenses committed against a thirteen-year old girl.
*45 Defendant accepted the State's offer and, in pleading guilty to third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a, testified at the plea hearing on March 19, 2004, that the victim lived with him in East Orange. The nature of their relationship was not explored and is not revealed by the record on appeal. At the plea hearing, defendant described the conduct underlying his guilty plea:
[DEFENSE COUNSEL]: And when you were with [the victim], did something happen between you and her?
THE DEFENDANT: Yes.
[DEFENSE COUNSEL]: What happened?
THE DEFENDANT: I touched her. I touched her breasts for sexual pleasure.
[DEFENSE COUNSEL]: And you knew that was wrong?
THE DEFENDANT: Yes.
On June 4, 2004, defendant was sentenced to a four-year probationary term; the court also imposed, among other things, community supervision for life.
There appears to be no dispute that defendant served the probationary term without incident. In June 2009, however, defendant lost his wallet, which contained his "green card."[1] Two weeks after he applied for a replacement card, an Immigration Custom Enforcement officer arrived at defendant's home and arrested him, on the ground that the 2004 conviction violated his status as a lawful permanent resident.
On February 3, 2010, defendant filed a petition for post-conviction relief (PCR), claiming his attorney failed to advise that if he pled guilty to third-degree endangering he would be deported; defendant later additionally argued that he would be subject to community supervision for life. The PCR judge conducted an evidentiary hearing, during which only defendant testified. Defendant's PCR attorney declined to call his trial attorney as a witness even though he was present and available.
Defendant testified during the hearing that he understood from the plea agreement and from what he was then told that he might benot that he would bedeported if he pled guilty pursuant to the terms of the plea offer. He also testified without contradiction that
once you get deported to Guyana, you are placed in prison, somebody has to come and claim you. There's nobody there to claim me. I have no family, no house, no nothing, absolutely nothing in Guyana.[[2]]
As for the second aspect of his PCR petitionthat he was insufficiently informed about community supervision for lifedefendant testified he "knew, as a penalty for pleading guilty to this offense, that [he] would be subject to community supervision for life."
The judge denied defendant's PCR petition in all respects for the reasons set forth in a thorough oral decision.
Defendant appealed, presenting the following arguments for our consideration:
I. PLEA COUNSEL WAS INEFFECTIVE BECAUSE HE FAILED TO ADVISE DEFENDANT OF THE DEPORTATION CONSEQUENCES OF PLEADING GUILTY TO AN OFFENSE INVOLVING THE SEXUAL ABUSE OF A MINOR.

*46 II. PLEA COUNSEL WAS INEFFECTIVE BECAUSE HE MISINFORMED DEFENDANT ABOUT THE CONSEQUENCES OF COMMUNITY SUPERVISION FOR LIFE.
We find insufficient merit in Point II to warrant discussion in a written opinion. R. 2:11-3(e)(2). We also reject Point I for the following reasons.

II
In a nutshell, the contents of which we will endeavor to more fully explain, the deportation question facing defendant and his attorney in 2004 was highly complex and not capable of being reduced to any clear, succinct, or certain answer. As a result, we agree with the PCR judge that defense counsel provided effective assistance when he advised defendant only that he "might" be deported.

A
We initially[3] note that the State has argued that defendant's ineffectiveness argument necessarily depends on the recent decisions in Padilla v. Kentucky, 559 U.S. ___, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), and State v. Nuñez-Valdéz, 200 N.J. 129, 975 A.2d 418 (2009). The State seeks to deprive defendant of the benefit of those holdings by arguing that they constitute new rules that should not be applied retroactively. We recently considered similar arguments. State v. Gaitan, 419 N.J.Super. 365, 17 A.3d 227 (App.Div.), certif. granted, 206 N.J. 330, 20 A.3d 436 (2011). We need not, however, traverse that ground again because, even if Padilla and Nuñez-Valdéz are applied retroactively, post-conviction relief was properly denied in this unfortunate case.[4]

B
Essentially bypassing the State's retroactivity arguments, as do we, the PCR judge applied Padilla's principles in denying relief. We agree this was a proper approach because we have since held that Padilla recognized a preexisting standard of professional conduct, see Gaitan, supra, 419 N.J.Super. at 372, 17 A.3d 227, which required attorneys to provide affirmative advice to noncitizen clients about the deportation consequences of their guilty pleas. Specifically, the Supreme Court held that where "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequences," counsel must provide advice as to whether deportation is "presumptively mandatory." Padilla, supra, ___ U.S. at ___, 130 S.Ct. at 1483, 176 L.Ed.2d at 295. The Court added, however, that "[i]mmigration law can be complex," and "[t]here will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." Id. at ___, 130 S.Ct. at 1483, 176 L.Ed.2d at 295-96. In those complex situations, the Court held that counsel's duty "is more limited"; that is, in situations where the deportation consequences are "not succinct and straightforward," counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration *47 consequences." Id. at ___, 130 S.Ct. at 1483, 176 L.Ed.2d at 296 (emphasis added).
Here, the PCR judge found it was not clear at the time defendant entered his guilty plea whether deportation was presumptively mandatory; thus, counsel's failure to provide clear and definitive advice was not a departure from the standard of attorney competence described in Padilla. Indeed, not only were the deportation consequences of defendant's guilty plea uncertain in 2004 but they remain uncertain now. This lack of clarity results not only from (1) existing doubt about whether defendant pled guilty to an "aggravated felony" but also (2) the scope of the examination that is undertaken to make that determination, and (3) the apparent erosion of the rule of lenity developed by the Supreme Court of the United States in immigration matters.

(1)
In delving into the reasons that compel our agreement with the PCR judge's determination that counsel could not in 2004 definitively advise defendant that deportation wasin the words of Padilla"presumptively mandatory," we first consider 8 U.S.C.A. § 1227(a), which sets forth the circumstances that render an alien deportable "upon the order of the Attorney General." That statute specifies, among other things, that a noncitizen "convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C.A. § 1227(a)(2)(A)(iii). "Aggravated felony" is defined elsewhere as including "murder, rape, or sexual abuse of a minor." 8 U.S.C.A. § 1101(a)(43)(A).
Congress did not define the phrase "sexual abuse of a minor" in this context. Thus, whether the undefined phrase "sexual abuse of a minor" fits the conduct for which defendant pled guiltynamely, engaging in "sexual conduct which would impair or debauch the morals" of a child under the age of sixteen, N.J.S.A. 2C:24-4ais highly uncertain absent a clear understanding of Congress' intent.
The congressional intent in enacting 8 U.S.C.A. § 1101(a)(43)(A) was a matter of considerable debate when defendant pled guilty in 2004 and remains unresolved. A review of the case law that has developed regarding the meaning of "sexual abuse of a minor" in this context reveals a very definite split among the circuits. There are two schools of thought on this subject.
One interpretation, constituting the majority approach, accepts the view of the Bureau of Immigration Appeals (BIA) that the scope of the phrase "sexual abuse of a minor" is illuminated by 18 U.S.C.A. § 3509, which provides rights to child victims and witnesses in federal criminal cases. Section 3509(a)(8) defines "sexual abuse" as including "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children[.]" And section 3509(a)(9)(A) defines "sexually explicit conduct" as including "actual or simulated . . . sexual contact[,] [which includes] the intentional touching, either directly or through clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire of any person" (emphasis added). The emphasized portions encompass the conduct in which defendant admitted he engaged when pleading guilty to third-degree endangerment in 2004.
This majority view had its genesis in a published BIA decision, which determined *48 that the phrase "sexual abuse of a minor," found in 8 U.S.C.A. § 1101(a)(43)(A), was intended to be broad, and as a result, the BIA would look to 18 U.S.C.A. § 3509 for an understanding of its scope. In re Rodriguez-Rodriguez, 22 I. & N. Dec. 991 (B.I.A.1999). That is, the BIA did not conclude that 18 U.S.C.A. § 3509 actually provides the definition of "sexual abuse of a minor" to be applied in construing 8 U.S.C.A. § 1101(a)(43)(A) but only that it provided illumination as to the latter's meaning. See Stubbs v. Attorney General, 452 F.3d 251, 255 n. 6 (3d Cir.2006) (recognizing, in quoting Rodriguez-Rodriguez, that this definition was not adopted by the immigration tribunal "as `a definitive standard or definition but invoke[d] . . . as a guide in identifying the types of crimes [the BIA] would consider to be sexual abuse of a minor'"). This non-committal utilization of the broad concepts contained in 18 U.S.C.A. § 3509 only added further ambiguity for attorneys attempting to advise their noncitizen clients about deportation.
Although a majority of the federal circuits considering this problem have adhered to the BIA's approach in Rodriguez-Rodriguez, some have done so for differing reasons. The Second, Third, Seventh, and Eleventh Circuits have applied the Rodriguez-Rodriguez approach because they have determined that Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694, 703 (1984), requires that they defer to the BIA's interpretation. See James v. Mukasey, 522 F.3d 250, 254 (2d Cir.2008)[5]; Stubbs, supra, 452 F.3d at 256; Gattem v. Gonzales, 412 F.3d 758, 763 (7th Cir.2005); Bahar v. Ashcroft, 264 F.3d 1309, 1311 (11th Cir. 2001). The Third Circuit was less committal, only "assum[ing], without deciding, that the BIA's interpretation is permissible." Stubbs, supra, 452 F.3d at 256. And the Fifth Circuit applied the definition contained in 18 U.S.C.A. § 3509 as a result of its own interpretation rather than the BIA's. United States v. Zavala-Sustaita, 214 F.3d 601, 602 (5th Cir.), cert. denied, 531 U.S. 982, 121 S.Ct. 434, 148 L.Ed.2d 441 (2000).
One circuit, however, has taken an entirely different approach. In Estrada-Espinoza v. Mukasey, 546 F.3d 1147, 1155-56 (9th Cir.2008), eleven members of the Court of Appeals for the Ninth Circuit, sitting en banc, unanimously held that Congress likely intended to equate the phrase "sexual abuse of a minor" in 8 U.S.C.A. § 1101(a)(43)(A) with its definition of the federal offense of "sexual abuse of a minor" delineated in 18 U.S.C.A. § 2243, explaining:
"[S]exual abuse of a minor" is a federal criminal offense. See 18 U.S.C. § 2243. It is also a common title for offenses under state criminal codes. In all cases, the offenses define what would, in more common parlance, be referred to as statutory rape. Thus, like murder, rape, theft, and burglary-among others"sexual abuse of a minor" needs no cross-reference, as the term already denotes a clearly defined criminal offense. If Congress had intended the aggravated *49 felony "sexual abuse of a minor" to be defined differently than the criminal offense "sexual abuse of a minor," it could have provided a definition, cross-referenced a different federal code provision, or even specified that the definition was not limited to the criminal definition. As we often observed, "Congress knows how to define terms when it wants to give them specific definitions at odds with everyday understanding." United States v. Young, 458 F.3d 998, 1007 (9th Cir.2006). Because Congress did not elect any of these options, the logical inference is that Congress intended "sexual abuse of a minor" to carry its standard criminal definition, on par with "murder" or "rape."
[Estrada-Espinoza, supra, 546 F.3d at 1156 (footnote deleted).]
We lastly note that the First Circuit has considered the problem but come to no conclusive view, although appearing to lean toward utilizing the definition contained in 18 U.S.C.A. § 2243. Emile v. INS, 244 F.3d 183, 186 n. 2 (1st Cir.2001) (questioning but not deciding whether 18 U.S.C.A. § 3509(a)(8) has relevance in determining whether a noncitizen has been convicted of the aggravated felony of "sexual abuse of a minor").
This split in the circuits is relevant to the matter at hand. Adopting the Rodriguez-Rodriguez interpretation that some of the circuits have followed would lead to a determination that defendant's conviction renders deportation "presumptively mandatory." On the other hand, the view adopted in the Ninth Circuit would likely suggest a different result. Of course, we examine these federal authorities, not to determine whether deportation is appropriate in this case, but to determine whether in 2004 defense counsel was able to provide a definitive opinion as to deportation. The authorities we have briefly canvassed demonstrate not only that the problem was far from clear in 2004 but that it remains doubtful even now.
In utilizing the descriptions adopted in Padilla, supra, 559 U.S. at ___, 130 S.Ct. at 1483, 176 L.Ed.2d at 295-96, whether deportation inexorably would follow defendant's guilty plea was a matter that was hardly "clear," "explicit," "succinct" or "straightforward."

(2)
Also roiling an attorney's ability to provide definitive advice to a noncitizen client about the likelihood of deportation is the uncertainty surrounding the type of analysis that would be undertaken by the tribunals charged with determining whether a noncitizen has committed an aggravated felony.
In Stubbs, the court considered the application of the so-called "categorical approach," announced in Taylor v. United States, 495 U.S. 575, 600-02, 110 S.Ct. 2143, 2159-60, 109 L.Ed.2d 607, 628-29 (1990), in determining whether a noncitizen has been convicted of an aggravated felony. The categorical approach "prohibits consideration of evidence other than the statutory definition of the offense, thus precluding review of the particular facts underlying a conviction." Stubbs, supra, 452 F.3d at 253-54. That approach is also "presumptively applied" except "when either the terms of `the federal statute enumerating categories of crimes . . . [or] the criminal statute of conviction . . .' invite further inquiry into the facts." Id. at 254 (quoting Singh v. Ashcroft, 383 F.3d 144, 161 (3d Cir.2004)). Certainly, at the time defendant was counseled here, the circumstances permitting application of this exception to the categorical approach were not readily apparent.
The Singh court determined that 8 U.S.C.A. § 1101(a)(43)(A) did not invite *50 further inquiry, but later, the Stubbs court concluded that the "statute of conviction"also, as here, N.J.S.A. 2C:24-4a did require closer analysis because the statute encompassed conduct that both would and would not constitute the "sexual abuse of a minor." Stubbs, supra, 452 F.3d at 254-55. As a result, the Stubbs court looked beyond the statute of conviction and examined the "charging instrument" to determine whether the noncitizen was charged with a violation of N.J.S.A. 2C:24-4a that could be equated with the "sexual abuse of a minor." Id. at 255. The court specifically chose not to consider "whether, even in cases where it is appropriate to abandon the categorical approach, we should ever extend our `inquiry beyond a charging instrument or a formal plea.'" Id. at 254 n. 5 (quoting Singh, supra, 383 F.3d at 163).
Stubbs considered only "the statute of conviction" and "the charging document." Id. at 255. Had defendant's trial attorney had the benefit of Stubbs in counseling defendant about the deportation consequences of his guilty plea to third-degree endangering, he would have advised that the Third Circuit was of the view that not every guilty plea to a charge of N.J.S.A. 2C:24-4a constitutes the "sexual abuse of a minor" because N.J.S.A. 2C:24-4a includes offenses that are both sexual and non-sexual. And, in inquiring further, the court recognized that the indictment, in charging Stubbs with engaging in "sexual conduct which would impair or debauch the morals of a child under the age of sixteen," did not charge that he engaged "in this `sexual conduct' with the child." Stubbs, supra, 452 F.3d at 255. Recognizing the possibility that the charge in question could have encompassed conduct, such as that discussed in State v. Hackett, 166 N.J. 66, 80, 764 A.2d 421 (2001) (holding that "mere nudity repeatedly presented at a window can constitute endangering the welfare of children if the other elements of the endangering crime are met"), which would not constitute "sexual abuse of a minor," the court held that resort to the statute of conviction and the indictment did not generate a conclusion that defendant was convicted of "sexual abuse of a minor." Stubbs, supra, 452 F.3d at 255-56.
This very nuanced approach suggests that deportation could very well turn on the precise wording of the indictment.[6] In that circumstance, an attorney representing a noncitizen facing similar criminal charges would be hard-pressed to provide any clear advice regarding the deportation consequences of a guilty plea.
Defense counsel, when advising defendant in 2004, did not have the benefit of Stubbs' guidance. Moreover, if the same question was posed today, counsel would have to consider other decisions of the Third Circuit that would question the approach taken in Stubbs regarding the *51 scope of materials relevant to determining whether the noncitizen was convicted of an aggravated felony.[7] Accordingly, both then and now, the nature of the inquiry in determining whether a conviction of third-degree endangering would constitute an aggravated felony was far from clear.

(3)
We lastly add that it is not at all clear particularly because Congress chose not to define the aggravated felony of "sexual abuse of a minor"the extent to which the tribunals sitting in judgment on deportation would apply the rule of lenity to which the Supreme Court has long adhered in immigration mattersa rule best defined in Justice Douglas's opinion for the Court in Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433, 436 (1948) (citation omitted):
We resolve the doubts in favor of that construction [sought by the noncitizen] because deportation is a drastic measure and at times the equivalent of banishment or exile. It is the forfeiture for misconduct of a resident in this country. Such a forfeiture is a penalty. To construe this statutory provision less generously to the alien might find support in logic. But since the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used.
Despite the fact that the Supreme Court has consistently endorsed this rule of lenity, see INS v. St. Cyr, 533 U.S. 289, 320, 121 S.Ct. 2271, 2290, 150 L.Ed.2d 347, 374 (2001); INS v. Cardoza-Fonseca, 480 U.S. 421, 449, 107 S.Ct. 1207, 1222, 94 L.Ed.2d 434, 459 (1987), many of the circuits that have adhered to the BIA's interpretation of the phrase "sexual abuse of a minor" appear not to have applied this rule of lenity, suggesting the accuracy of Judge Posner's comment in Gonzales-Gomez v. Achim, 441 F.3d 532, 535 (7th Cir.2006), that "[t]he only consistency that we can see in the government's treatment of the meaning of `aggravated felony' is that the alien always loses." That quip may be an accurate assessment of the current state of the law, or the environment in which these laws are now applied, but there was no reason to anticipate in 2004 the growing tendency in the federal courts to disregard the Supreme Court's rule of lenity.

III
And so we return to the plight of an attorney in 2004 attempting to provide accurate advice regarding the deportation consequences of a guilty plea to third-degree endangering. Judge Posner's fair assessment in Gonzales-Gomez, which would probably represent the best advice in counseling today a noncitizen charged with a sex offense against a minor, was the product of case law and events that developed after defendant pled guilty here. But, for the reasons we have briefly explored, it must be concluded that even todaywith the aid of eight additional years of federal decisional law regarding the meaning of 18 U.S.C.A. § 1101(a)(43)(A)it would be difficult to counsel defendant with any clarity as to the deportation consequences of a guilty plea to third-degree endangering. The definition of the aggravated felony of "sexual abuse of a minor," the extent to which *52 the "categorical approach" would apply to the scope of the examination, and the apparent rapid erosion of the rule of lenity in immigration matters, are critical concepts mired in complexities; to borrow from Winston Churchill, the matter was then and remains, "a riddle wrapped in a mystery inside an enigma."
We conclude that in 2004, when defendant pled guilty, a determination as to whether a guilty plea would presumptively mandate deportation was far from clear, and defendant's trial attorney was not ineffective in allowing him to plead guilty without a more definitive statement about the deportation consequences of his plea.
Affirmed.
NOTES
[1] Green cards are no longer green. The term, however, is still colloquially used to refer to a card that identifies its holder as a lawful permanent resident.
[2] Defendant testified he has not been in Guyana since he was approximately seven years old.
[3] In arguing the judge properly denied relief, the State also argues that the PCR petition was procedurally barred because it was not filed within five years of the entry of the judgment of conviction, citing Rule 3:22-12(a)(1). We find this argument to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
[4] Although we have not been informed of defendant's current immigration status, it is difficult to ignore the fact that the State's interest in resisting post-conviction relief will likely result in defendant's banishment from this country without serving any of the purposes of our criminal code.
[5] In another decision, the Second Circuit appears to have adopted the Rodriguez-Rodriguez approach for substantive reasons rather than because it was required to defer to the BIA's judgment. In Mugalli v. Ashcroft, 258 F.3d 52, 58-59 (2d Cir.2001) (internal quotation and citation omitted), the court concluded that adoption of the definition contained in 18 U.S.C.A. § 3509 "is consonant with the general understood broad meaning of the term `sexual abuse'" as contained in dictionaries and also supportive of what it viewed as a congressional intent to "provide . . . a comprehensive scheme to cover crimes against children."
[6] The circumstances here may be distinguishable from Stubbs because the ninth count of the indictment, to which defendant pled guilty, charged him with having, on March 2, 2002, "knowingly engag[ed] in sexual conduct with [the victim, who was born in May 1989], which would tend to impair or debauch the morals of [the victim]." By comparison, the court of appeals found significant the fact that Stubbs pled guilty to a count of the indictment that did not expressly charge him with engaging in the described conduct "with the child." 452 F.3d at 255. Absent that specific language, the court found that Stubbs was not convicted of "sexual abuse of a minor." Ibid. Here, however, defendant was charged with engaging in prohibited sexual conduct "with" the victim, a fact that might now be viewed as fatal on the deportation question. The likelihood that this distinction would provide a basis for avoiding deportation, however, was not likely known or appreciated prior to the court's decision in Stubbs in 2006.
[7] Adding even more uncertainty is the fact that other decisions from the Third Circuit suggest, contrary to Stubbs and Singh, that consideration may be given to the plea colloquy and "explicit factual findings by the trial judge." Mercado v. Attorney General, 250 Fed.Appx. 515, 518 (3d Cir.2007); see also Alaka v. Attorney General, 456 F.3d 88, 106 (3d Cir.2006).